

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1780-08

### PAMELA SHAREKA LANGHAM, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TAYLOR COUNTY

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, HOLCOMB and COCHRAN, JJ., joined. KELLER, P.J. filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined. Hervey, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

## O P I N I O N

In this prosecution for possession of a controlled substance, a police officer was permitted to testify before the jury about what a confidential informant had told him with respect to the scope of the appellant's involvement in drug activities in the house that she shared with her boyfriend and others. The Eleventh Court of Appeals held that the testimony was not objectionable under the Confrontation Clause of the Sixth Amendment to the United

States Constitution because it was not testimonial.[1] Alternatively, the court of appeals held that admission of the testimony, if constitutional error, was harmless in any event under Rule 44.2(a) of the Texas Rules of Appellate Procedure.[2] We granted the appellant's petition for discretionary review in order to examine these holdings.[3]

## FACTS AND PROCEDURAL POSTURE

The appellant was indicted for the offense of possession of cocaine in an amount less than a gram, a state-jail felony.[4] A jury found her guilty of that offense. The appellant elected to go to the judge for assessment of punishment, and the trial court sentenced her to 18 months' confinement in a state-jail facility but suspended the imposition of sentence and placed her on community supervision for a period of three years.

### The Trial

The guilt phase of trial was relatively brief. The State called only two witnesses in its case-in-chief. Its first witness was Larry Todsen, a forensic scientist with the Texas Department of Public Safety's crime lab in Abilene. Todsen testified that Rodney Smith, a detective with the Narcotics Unit of the Abilene Police Department, had presented him with

---

[1] *Langham v. State*, 269 S.W.3d 108, 113 (Tex. App.—Eastland 2008).

[2] *Id*. at 114 (citing TEX. R. APP. P. 44.2(a)).

[3] TEX. R. APP. P. 66.3(c).

[4] TEX. HEALTH & SAFETY CODE § 481.115(b).

two small baggies containing substances that he tested and found to be cocaine. One of the baggies contained only one milligram of cocaine, or "one-one/thousandth of a gram[.]" The other baggie contained only seven milligrams, or "[s]even one-thousandths of a gram[.]" These are, Todsen conceded, "trace" amounts. He also conceded that it is "possible" that a person could have such a trace amount of a substance "on them and not even be aware of it[.]" The amount was sufficiently small, he said, that "all or nearly all of the substance . . . was used in the analysis."

The State's other case-in-chief witness was Detective Smith. After explaining to the jury that many of his investigations begin with tips from confidential informants, Smith gave the following testimony that is the subject of this appeal:

Q       Okay. Are you familiar with an address at 5301 Encino?

A       Yes, ma'am, I am.

Q       Is that address in Abilene, Taylor County, Texas?

A       Yes, it is.

Q       And at some point, did you receive information from a confidential informant regarding that address?

A       I did.

Q       And what was the content of that information?

[DEFENSE COUNSEL]: Objection, hearsay. Denial of confrontation and contrary to Crawford versus Washington.

THE COURT: Appreciate it. The objection is overruled.

Q    (BY [PROSECUTOR]) What was the content of that information?

A    Information was specific and that the – it was a residence that was located on Encino, 5301 Encino; that that particular residence was being used as a place where drugs were trafficked, were being sold, becoming – the specific drug was mentioned as being cocaine, crack cocaine, and one individual was given to me by name, *and then others who were there at the residence while this was taking place were also given to me by description.*

Q    Okay.  Now, you said that the confidential informant gave you one person by name?

A    Yes.

Q    Who was that person?

A    His name was Charlie Collins.

Q    Is he a person you are familiar with?

A    Yes, he is.

Q    How do you know him?

A    Through numerous investigations through both personal, and I have addressed him personal in the past, and through information, also through other informant information.

Q    Do you know him by any other names?

A    Yes, I do.

Q    What do you know him as?

A    His street name is Spyder.

Q    Okay.  *And the information that you received on the other parties involved, could you tell the jury what that information was?*

[DEFENSE COUNSEL]: Your Honor, we would also object to that as also being hearsay in violation of confrontation under both Texas and U.S. Constitutions as well as contrary to Crawford versus Washington.

THE COURT:  Objection is noted.  It's overruled.

THE WITNESS: *In regards to the other information I received of the other people that were present at the residence?  And I believe that's the question.*

Q      (BY [PROSECUTOR])  That is the question.

A      The – several people were living at the residence.  There were Charlie Collins, that I have already mentioned, *is at that time or was at that time operating a crack cocaine distribution business out of the house, had a girlfriend, a live-in girlfriend or someone that was living there at the time with him that was also involved.*  And then there were some other people, two other people that were also residents of the house, or that were there in care, custody, control of the house as well.

Q      *Do you recall specifically what the identifying information was on Spyder's girlfriend?*

A      *Specifically, I don't have that in front of me.  She was later identified, a black female.  I don't have that information on that search warrant in front of me.*[5]

On the basis of this information, Smith obtained a search warrant.  At approximately 11:23 a.m. on August 3, 2005, he led a police raid on the residence.

Upon entering the house, the police discovered Collins and the appellant (who is a black female) together in the main bedroom of the house.  They also discovered two other individuals, Daniel Kilcrease and his wife, Betty Ann Kilcrease (who is white), in another

---

[5]  All emphasis added unless otherwise indicated.

bedroom, which they were renting from Collins and the appellant. A search of the house uncovered "trace" amounts of cocaine in several places. In a pantry in the kitchen, the police found a small ceramic plate, and "just above" the pantry they discovered a single-edged razor blade.[6] On the plate they found "a good quantity of powder traces[.]" This turned out to be the "one-one thousandth of a gram" quantity that Todsen later determined to be cocaine. Smith told the jury that such plates are often used for cutting crack cocaine and will typically contain cocaine residue.

Also in the kitchen, the police found an electronic scale "that . . . weigh[s] in small portions" such as grams, which is "typically," Smith testified, how cocaine is distributed. On the surface of the scale "was a powder substance" similar to the substance that the police had found on the plate. Smith never described the quantity of the powder on the scale more precisely, however, than "small traces"; he did not submit the powder to DPS for analysis or precise quantification.

Under the bed in the main bedroom, the police found a Brinks home security safe. Both Collins and the appellant admitted owning the safe, and they both told Smith that the key could be found on a small table in the bedroom. Inside the safe the police discovered "two large plastic bags that appeared to have some coins of some kind in there, and a pendant, a silver-type of jewelry-type pendant, currency, U.S. money, money, and then what

---

[6] A photograph of the razor blade indicates it was found wedged, apparently in plain sight, in the molding above the door to the pantry.

was a noticeable amount of powder traces along the edges on the inside, white powder." The "noticeable" white powder from the safe was the "seven-one thousandths of a gram" of cocaine that Todsen would later determine to be cocaine. The currency ranged in denomination from hundred-dollar bills to twenties, tens, fives, and ones, totaling $775.

Against the advice of her counsel, the appellant also testified. She acknowledged that the safe belonged to her and that she had opened it the night before the police raid, but had never noticed the "little particles" that the police discovered. She denied ever having seen the plate in the pantry or the razor blade. She claimed to have bought the scale to use for cooking and baking, though she admitted there was not much food in the house. She explained that the money in the safe came from "me working at my job when I was working at Sonic." Later she elaborated that some of the money came from "other sources, such as rent or other people working and living there that would contribute to that $775[.]" She denied that Collins was a drug dealer and that she "made runs" for him. She conceded that there were several "pretty nice things" at the residence—a pool table, a sports car, satellite television—"for four people earning minimum wage." But she denied having any awareness of the presence of cocaine on the plate, on the scale, in the safe, or anywhere else in the house. She also denied having intentionally or knowingly possessed cocaine.

In rebuttal, the State presented brief and reluctant testimony from Daniel Kilcrease, one of the other residents at 5301 Encino. Kilcrease was no longer living in Abilene and was

not required to disclose his current address.[7] On direct examination, in response to leading questions, he testified that there were "drugs being dealt out of the house[,]" that the appellant had been "in close proximity to those drugs[,] that she had seen them "being cut and dealt[,]" and that she had made "runs" for Collins. On cross-examination, defense counsel impeached Kilcrease by securing his admission that he had been convicted of the felony offense of statutory rape in Oklahoma in 1992 and was charged with a third degree felony offense of credit card abuse in Texas in "'94 or '96," which "was reduced to a misdemeanor."

The State waived opening jury argument. Counsel for the appellant therefore argued first, emphasizing to the jury that, to convict the appellant, it must find she was "aware" of the presence of the cocaine. He suggested that the "minute amount" of drugs found by the police was not enough to establish beyond a reasonable doubt that the appellant was even aware of the cocaine, much less that she intentionally and knowingly possessed it. In response, the prosecutor began her argument as follows:

> [PROSECUTOR]: May it please the Court, [DEFENSE COUNSEL], ladies and gentlemen of the jury. This is a case involving traces of cocaine that were tested twice. Not a lot for you to look at here. Not a lot for you to see because they were tested and determined to be cocaine. *Rodney Smith got information from a confidential informant August 1ˢᵗ or 2ⁿᵈ that he was in a house at 5301 Encino.*

---

[7] The prosecutor represented to the trial court that Kilcrease "fears for his safety; he fears for his family's safety." Kilcrease himself did not so testify, but he refused, with the trial court's consent, to disclose his address and acknowledged that he did not "really want to be here."

[DEFENSE COUNSEL]: Your honor, at this point in time, may I continue to have my running objection to the hearsay informant information that we had the running objection to during the course of the testimony?

THE COURT: No such objection is required during closing arguments. It will be based on the testimony.

[PROSECUTOR]: *Rodney Smith received information from a confidential informant that he had been in a residence and he had seen a quantity of cocaine. He had seen four people: Spyder, Spyder's girlfriend, and two white people. They execute a search warrant and they find Spyder, Spyder's girlfriend, David Kilcrease, and his wife, Betty. Now, we know that [the appellant] is living there because we've got evidence of it. . . .*

In arguing that the appellant must have been aware of the cocaine in the house, the prosecutor went on to emphasize the facts that the appellant possessed a gun, that she had $775 in the safe, that there was no food in the pantry to support her explanation that the scale was intended for cooking only, that there was a large number of material possessions at the residence for four people supposedly earning minimum wage, and that Kilcrease had confirmed that "[t]here were drugs in the house." The jury found the appellant guilty after deliberating for less than half an hour.

## On Appeal

The appellant argued on appeal that the admission of Smith's testimony of what the confidential informant had told him with respect to the appellant's involvement in drug activities at 5301 Encino violated the Confrontation Clause of the Sixth Amendment as construed by the United States Supreme Court in *Crawford v. Washington*.[8] The court of

---

[8] 541 U.S. 36 (2004).

appeals rejected this claim, reasoning that "[h]ere, the primary purpose behind the [out-of-court] statements of the confidential informant was not to provide testimony but to provide information to Detective Smith in order that he could obtain a search warrant."[9] In the alternative, the court of appeals held that any constitutional error in admitting evidence of the confidential informant's statements was harmless beyond a reasonable doubt because the "evidence is legally and factually sufficient, even in the absence of statements of the confidential informant, to support the finding of guilt."[10]

In her petition for discretionary review, the appellant argues that the court of appeals erred in holding that the out-of-court statement of Smith's confidential informant was not "testimonial" in contemplation of *Crawford* and therefore did not violate the Confrontation Clause. She relies in large measure on the opinion of the Sixth Circuit Court of Appeals in *United States v. Cromer*.[11] She also argues that the court of appeals erred to conduct an evidence-is-otherwise-sufficient harmless error analysis. The State responds that the out-of-court statements were not testimonial because the confidential informant would not have expected them "to be used in a criminal prosecution. Rather, it was just a tip to begin an

---

[9] *Langham v. State*, *supra*, at 113.

[10] *Id*. at 114.

[11] 389 F.3d 662 (6th Cir. 2004).

investigation."[12]   Moreover, even if testimonial, the State continues, the confidential informant's out-of-court statements do not violate the Confrontation Clause because they were not offered or admitted for the truth of the matters asserted, but only as "background" evidence "so the jury could better understand why Smith took the actions he did."[13]   The State resorts to its own interpretation of *Cromer* for these propositions.   Finally, the State argues that the court of appeals did not err to conclude that any error was harmless because the other evidence admitted to establish the appellant intentionally or knowingly possessed cocaine was not just otherwise sufficient, but "overwhelming."[14]

We granted the petition for discretionary review in order to determine whether the out-of-court statements of the confidential informant were "testimonial," or whether they might have been admissible, even though "testimonial," because not offered or admitted for the truth of the matters asserted.   We also granted review to examine the propriety of the court of appeals's harm analysis.   We conclude that the court of appeals erred to hold that Smith's testimony recounting the statements of the out-of-court confidential informant did not violate the Confrontation Clause and that the court of appeals's alternative analysis finding any such constitutional error to be harmless was flawed.   We therefore reverse the judgment of the

---

[12] State's Brief, at 7.

[13] *Id*.

[14] *Id*. at 11.

court of appeals and remand the cause to that court to conduct a proper harm analysis.

## THE CONFRONTATION CLAUSE

### The Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment,[15] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"[16] In accordance with this constitutional right, out-of-court statements offered against the accused that are "testimonial" in nature are objectionable unless the prosecution can show that the out-of-court declarant is presently unavailable to testify in court and the accused had a prior opportunity to cross-examine him.[17] The United States Supreme Court has yet to define the outer boundaries of what constitutes a "testimonial" out-of-court statement, but it has identified "three kinds of [out-of-court] statements that could be regarded as testimonial:"[18]

- ex parte in-court testimony or its functional equivalent—that is, materials such as affidavits, custodial examinations, prior testimony that the accused was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used

---

[15]

*Pointer v. Texas*, 380 U.S. 400, 406 (1965).

[16]

U. S. CONST. amend. VI.

[17]

*Crawford*, *supra*, at 59, 68; *Wall v. State*, 184 S.W.3d 730, 734-35 (Tex. Crim. App. 2006).

[18]

*Wall*, *supra*, at 735.

prosecutorially;

- extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and

- statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.[19]

With respect to this last category of out-of-court statements, and in the particular context of statements made in response to police inquiries, in *Davis v. Washington*,[20] the Supreme Court elaborated that such a statement is "testimonial" if the circumstances, viewed objectively, show that it was not made "to enable police assistance to meet an ongoing emergency" and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[21]

Whether a particular out-of-court statement is testimonial or not, we have said, is "a question of law."[22]  Although we defer to the trial court's resolution of credibility issues and historical fact, we review *de novo* the ultimate constitutional question of whether the facts

---

[19]

   *Id*. at 735-36 (quoting *Crawford*, *supra*, at 51-52);  *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2531 (2009).

[20]

   547 U.S. 813 (2006).

[21]

   *Id*. at 822;  *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008);  *De la Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

[22]

   *De la Paz*, *supra* at 680.

as determined by the trial court establish that an out-of-court statement is testimonial.[23] In making that judgment, we look to determine whether "the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[24]

Parenthetically, the Supreme Court has observed that an out-of-court statement, even one that falls within its definition of "testimonial" statements, is not objectionable under the Confrontation Clause to the extent that it is offered for some evidentiary purpose other than the truth of the matter asserted.[25] When the relevance of an out-of-court statement derives solely from the fact that it was made, and not from the content of the assertion it contains, there is no constitutional imperative that the accused be permitted to confront the declarant. In this context, the one who bears "witness against" the accused is not the out-of-court declarant but the one who testifies that the statement was made, and it satisfies the Confrontation Clause that the accused is able to confront and cross-examine him.[26]

---

[23] *Wall*, *supra* at 742.

[24] *De la Paz*, *supra* at 680.

[25] *Crawford*, *supra*, at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409 (1985)).

[26] *See Street*, *supra*, at 414 ("The *nonhearsay* aspect of [the out-of-court declarant's] confession—not to prove what happened at the murder scene but to prove what happened when respondent confessed—raises no Confrontation Clause concerns. The Clause's fundamental role in protecting the right of cross-examination . . . was satisfied by [the interrogating officer's] presence on the stand.").

The Supreme Court has not applied these confrontation principles specifically in the context of out-of-court statements made to the police by a confidential informant. But a number of lower federal courts have. The lead case—the case that both parties rely on in this appeal—is the Sixth Circuit's opinion in *Cromer*. There it was held that an out-of-court statement by a confidential informant to the police asserting that the accused committed the charged conduct is testimonial.[27] If offered for the truth of the matter asserted, the court held, it is objectionable unless the confidential informant is unavailable and the accused has had a prior opportunity to cross-examine him.[28] However, the court continued, the same out-of-court statement may be admissible, though testimonial, if it is *not* offered for the truth of the matter asserted, but only to supply "background," *e.g.*, to provide the investigative context in order to explain police conduct.[29] Other courts have followed *Cromer*'s lead, while frequently cautioning prosecutors not to invoke the "background" exception too broadly, lest it become no more than a pretense for insulating out-of-court assertions from the crucible of confrontation and cross-examination.[30]

---

[27] *Cromer*, *supra*, at 675.

[28] *Id*. at 677-78.

[29] *Id*. at 676.

[30] *See*, *e.g.*, *United States v. Maher*, 454 F.3d 13, 21-22, 24(1ˢᵗ Cir. 2006)(out-of-court statement made by confidential informant to police officer claiming that Maher was involved in drug activity was testimonial for confrontation purposes, and "[t]he government's articulated justification—that any statement by an informant to police which sets context for the police

investigation is not offered for the truth of the statement and thus not within *Crawford*—is impossibly overbroad. * * * The dividing line often will not be clear between what is true background to explain police conduct (and thus an exception to the hearsay rule and thus an exception to *Crawford*) and what is an attempt to evade *Crawford* and the normal restrictions on hearsay. But we are on firm ground in warning prosecutors of the risks they face in backdoor attempts to get statements by non-testifying confidential informants before a jury"); *United States v. Hearn*, 500 F.3d 479, 483-84 (6th Cir. 2007) (out-of-court statements to police from confidential informants that inculpated Hearn were testimonial, and the repetition and "excessive detail" of statements, along with prosecutor's emphasis of same during summation, belied government's claim that they were offered for limited purpose of providing context); *United States v. Powers*, 500 F.3d 500, 509-10 (6th Cir. 2007) (confidential informant's out-of-court statement that Powers was "a well-known cocaine supplier" violated Confrontation Clause because testimonial and not admissible as "background" evidence because the details about his "alleged prior criminal behavior were not necessary to set the context of the sting operation for the jury"); *United States v. Cruz-Diaz*, 550 F.3d 169, 177 (1st Cir. 2008) ("when an out-of-court statement is purportedly offered into evidence as non-hearsay—for example, to provide context for police action or inaction—we are concerned about whether the stated purpose for introducing the evidence masks an attempt to evade *Crawford* and the normal restrictions on hearsay."); *State v. Johnson*, 771 N.W.2d 360, 369-70 (S.D. 2009) (out-of-court statement of confidential informant was testimonial because "an objective witness acting as a government informant would believe that his statement to law enforcement, regarding the ability to purchase drugs from a certain person, would be available for use at a later trial[,]" and the State "crossed the line" from background evidence to substantive evidence of guilt when it referred to the statement substantively during final argument); *State v. Bell*, No. M2008-01187-CCA-R3-CD, 2009 WL 3925370 (Tenn. Crim. App., delivered November 19, 2009), at *5 ("Generally, courts have held that statements made by informants directly to police violate the Confrontation Clause. Most informant statements to police that are sought to be introduced at trial divulge information about the defendant to police and are offered to prove the truth of that information. The statements' admission, therefore, violates the defendant's right to confront his accusers because it is both testimonial and hearsay. In limited instances the State may introduce such statements in order to explain why police investigated a certain target. These instances are few and far between, however, and the Clause allows for the admission of only so much of the informant's statement that is necessary to demonstrate what caused the police to investigate the target.") (citations omitted).

The Confrontation Clause aside, many courts (including this Court) have similarly warned that the rule against hearsay may not be circumvented by the expedient of a "background" or "investigative context" rationale. *E.g.*, *United States v. Hernandez*, 750 F.2d 1256, 1257 (5th Cir. 1985) ("The government's protestation that the evidence [of an out-of-court "referral by the U.S. Customs as Hernandez being a drug smuggler"] was not elicited to prove Hernandez was a drug smuggler, but merely to explain the motivation behind DEA's investigation is unconvincing from both a common sense perspective, and from the government's subsequent use of that testimony. The government, as a last resort, says the testimony was merely background, but it is not permissible to lay such an invidious and prejudicial background."); *State v. Hearold*, 603 So.2d 731, 737 (La.

**Analysis**

Applying these principles to the confidential informant's out-of-court statements in this case, the court of appeals concluded that they were not testimonial for Confrontation Clause purposes. "Here," the court of appeals reasoned, "the primary purpose behind the statements of the confidential informant was not to provide testimony but to provide information to Detective Smith in order that he could obtain a search warrant."[31] In our view, however, this holding reflects a flawed understanding of what the Supreme Court meant by the "primary" purpose of an interrogation.

The adjective "primary" may be used to mean "first in order of time or development:

---

1992) ("Generally, an explanation of an officer's action should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called 'explanation' involves a direct assertion of criminal activity against the accused.  * * *  The probative value of the mere fact that an out-of-court declaration was made is generally outweighed by the likelihood that the jury will consider the statement for the truth of the matter asserted."); *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Allowing [law enforcement] agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far in abrogating the defendant's rights under the sixth amendment and the hearsay rule."); *Schaffer v. State*, 777 S.W.2d 111, 114-15 (Tex. Crim. App. 1989) ("The police officer, however, should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that she was entitled to tell the jury the information upon which she acted."). *See also* 2 Kenneth S. Broun, *et al.*, McCORMICK ON EVIDENCE § 249 (6th ed. 2006), at 136-37 (investigating officers should not, under the guise of "context," "be allowed to relate historical aspects of the case, such as complaints and reports of others containing inadmissible hearsay.  Such statements are sometimes erroneously admitted under the argument that the officers are entitled to give information upon which they acted.  The need for this evidence is slight, and the likelihood of misuse great.  Instead, a statement that an officer acted 'upon information received,' or words to that effect, should be sufficient").

31

*Langham*, *supra* at 113.

INITIAL[.]"[32] By this understanding of the word, it was certainly accurate for the court of appeals to say that Detective Smith's "primary" purpose in seeking information from his confidential informant was to secure a search warrant for the premises at 5301 Encino. That was, indeed, his immediate objective. But we doubt that the Supreme Court in *Davis* meant to convey that, in order for a statement that he obtains to be "testimonial," a police officer's "first-in-time" purpose must be "to establish or prove past events potentially relevant to later criminal prosecution."[33] The word "primary" as an adjective may also mean "first in rank or importance: CHIEF: PRINCIPAL[.]"[34] It is far more likely that, by "primary purpose," the Supreme Court meant to convey the purpose that is "first" among all potentially competing purposes "in rank or importance."

Our conclusion that "primary" means "first in importance" rather than "first in time" is bolstered by the Supreme Court's application of the standard it announced in *Davis* itself,[35] as well as our own application of that standard in *Vinson*,[36] both cases involving police response to a domestic disturbance. These cases recognize that, when the police are called

---

[32] WEBSTER'S THIRD INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED (2002), at 1800.

[33] *Davis*, *supra* at 822; *Vinson*, *supra* at 338; *De la Paz*, *supra* at 680.

[34] WEBSTER'S, *supra*.

[35] 547 U.S. at 826-32.

[36] 252 S.W.3d at 338-42.

upon to respond to emergency situations, they often find it necessary to ask questions while discharging their duties that are likely to elicit responses about criminal behavior. But for as long as the emergency situation is still ongoing, the "primary purpose" of the communication is not to develop a factual predicate for later litigation; rather, it is to decide how to respond appropriately to the situation. The exchange cannot be said to have been undertaken for the "primary" purpose of memorializing facts for future prosecution. Once the emergency is resolved, however, any continuing or subsequent interrogation may well provoke a testimonial response for Confrontation Clause purposes because, at that juncture, "[o]bjectively viewed, the primary, if not the sole, purpose of the interrogation [has become] to investigate a possible crime[.]"[37] This latter observation clearly illustrates that, by "primary" purpose, the Supreme Court in *Davis* meant the "first in importance" among multiple, potentially competing purposes.

Understood in this way, it is manifest that the "primary purpose" of Detective Smith's communication with his confidential informant was to pave the way for a potential criminal prosecution. Information that cocaine was being peddled from the residence at 5301 Encino, as the confidential informant asserted, was unquestionably relevant to the subsequent prosecution of anyone who was involved in that activity. That before he could initiate such a prosecution Detective Smith had to first use that information to obtain a search warrant does not detract from the fact that his "primary,"—that is to say, his "first in rank or

---

[37] *Davis*, *supra* at 830.

importance"—purpose was to apprehend and eventually prosecute those in the residence who were involved (and the confidential informant specifically asserted that the appellant "was also involved") in the illegal enterprise.[38] A search warrant is never an end in itself. While securing a search warrant may have been Detective Smith's "first-in-time" objective in talking to his confidential informant about the activities at 5301 Encino, potentially securing a conviction and punishment for those involved was his "first-in-importance" objective. We conclude that the out-of-court statements were testimonial for Confrontation Clause purposes.

But were the statements admissible, though testimonial, because they were not offered to establish the truth of the matter asserted—that cocaine was being sold from 5301 Encino, and that the appellant "was also involved"—but only to provide "background" to explain why Detective Smith came to investigate that particular residence, as the State now contends? We do not believe so. Typically, so-called "background" evidence is admissible, not because it has particularly compelling probative value with respect to the elements of the alleged offense, but simply because it provides the jury with perspective, so that the jury is equipped to evaluate, in proper context, *other* evidence that more directly relates to elemental facts. But it is not necessary to go into elaborate detail in setting the evidentiary scene, and there

---

[38]

While the confidential informant's out-of-court statement did not identify the appellant by name as the "girlfriend" who "was also involved" in drug dealing from the residence, she was the only "black female" in the house at the time of the raid, and it would have been clear to the jury from the balance of the evidence that she was the girlfriend the confidential informant was talking about.

is a danger inherent in doing so. Because the relevance of "background" evidence is marginal to begin with, the introduction of too much incriminating detail may, whenever the evidence has some objectionable quality not related to its marginal relevance, prove far more prejudicial than probative. Thus, even when a confidential informant's out-of-court statement showing "background" is not *offered* for the truth of the matter asserted, its probative value to place other, more direct evidence in an understandable context will usually be slight compared to its tendency to cause the jury to consider it for that improper, truth-of-the-matter-asserted purpose. And the greater and more damning the detail contained in that out-of-court statement, the greater the likelihood that the jury will gravitate toward the improper use. This is the reason that courts have practiced caution in declaring testimonial out-of-court statements of confidential informants to be admissible as "background" evidence: too much damning information will erode judicial confidence that the accused has truly enjoyed his Sixth Amendment right to confront *all* of "the witnesses against him[.]"[39]

Here, Detective Smith's representation of his confidential informant's statements with respect to the criminal activities at 5301 Encino, and the appellant's "involvement" in them, provided far greater detail than was reasonably necessary to explain why the police decided to investigate the residence. The bare fact that Smith had obtained unspecified information justifying a search warrant would readily have sufficed to serve this purpose. The jury did not need to know the kind of details that would have gone into his probable cause affidavit

---

[39] U.S. CONST. amend. VI.

in order to have context enough to understand and evaluate the balance of the State's evidence implicating the appellant in possession of the cocaine found in the house. Under these circumstances, and when the unnecessary details derive from an out-of-court statement that is testimonial, the State cannot justify admitting them over a Confrontation Clause objection with an argument that they are offered merely to supply "background."

In any event, the State's actual use of the out-of-court statements at the appellant's trial was inconsistent with its appellate claim that they were not offered for the truth of the matter asserted. The State made no such representation when it offered the statements,[40]

---

[40]

In her dissenting opinion, Judge Hervey argues that the "appellant's Confrontation Clause objection was not a proper objection." Dissenting opinion, at 2. Judge Hervey maintains that, because the State might have justified the proffer of the confidential informant's out-of-court statement as "background evidence," the appellant should not have objected on Confrontation Clause grounds. Instead, the appellant should simply have acceded to admission of the out-of-court statement for the limited purpose for which it *might* have been offered, and then requested a limiting instruction to inform the jury that it should only consider the statement for its proffered purpose as "background" and not for the truth of the matters asserted. Failure to do this, she believes, was fatal to the appellant's Confrontation Clause claim. Our caselaw does not bear this out.

In *Vinson*, *supra*, at 340, we made clear that "once [a Confrontation Clause] objection is made, the proponent must demonstrate that the proffered evidence overcomes the stated objection." "In other words, once [the] appellant objected, the State was obligated to establish either (1) that the [out-of-court declaration] did not contain testimonial hearsay statements or (2) that the [out-of-court declaration] did contain testimonial hearsay statements but that such statements were nevertheless admissible under *Crawford*." *De la Paz*, *supra*, at 680-81. Indeed, in *De la Paz*, we held that certain out-of-court declarations had been erroneously admitted simply *because* the State failed to sustain its burden, as proponent of the declarations, to demonstrate that they were admissible under *Crawford*. *Id*. at 681. Here, when the appellant made her Confrontation Clause objections, the burden shifted to the State to demonstrate admissibility. The trial court did not wait for an explanation from the State, however, before overruling the objection, thus admitting the confidential informant's out-of-court assertions—apparently—for all purposes. Under these circumstances, it was not incumbent on the appellant to request a limiting instruction as a predicate to claiming error on appeal. She had obtained her adverse ruling. If anything, the State had an obligation to explain (if only to avoid the risk of reversal on appeal) that its proffer was a limited one—to establish

even though it would have been responsive to the appellant's hearsay and Confrontation Clause objections. Moreover, the prosecutor clearly made substantive use of the statements in her final summation, arguing far beyond their relevance as mere background evidence to rebut the defense claim that the diminutive portions of cocaine found in the residence justified a reasonable doubt that the appellant intentionally or knowingly possessed it. The prosecutor clearly "crossed the line" from any permissible "background" relevance when she argued the statement's substantive, truth-of-the-matter-asserted value.[41] Because the statement was testimonial and put to evidentiary use for the truth of the matter asserted, and because the State has not shown that the out-of-court declarant was unavailable to testify at trial and that the appellant had a prior opportunity to cross-examine him, admission of the statement over the appellant's timely and specific objection violated her Sixth Amendment

---

"background"—and that it was not offering the out-of-court declarations for the truth of the matters asserted therein. Had the State offered such a justification for admission on the record, and had the trial court accepted it, then Judge Hervey might have a plausible argument that a limiting instruction was required of the appellant before she should be allowed to prevail on her Confrontation Clause claim. But it is clear that the State was in fact offering the out-of-court declarations of its informant, and *did* in fact use those statements, *substantively*, for the truth of the matters asserted, and that the trial court admitted them for that purpose. For the appellant to have requested a limiting instruction in the premises would have been pointless. We cannot say that she has somehow procedurally defaulted her Confrontation Clause claim by failing to do so.

Judge Hervey responds that "*Vinson* should not be read as abrogating the well-settled rule that a trial court's ruling admitting evidence will be upheld on appeal if it is correct under any legal theory applicable to the case." Dissenting opinion, at 3, n.2. We do not read *Vinson* to abrogate this rule. Until the State has satisfied its burden, as proponent of the out-of-court statement, to provide an explanation for why the statement is admissible despite the appellant's Confrontation Clause objection, the possibility that it may be admitted as "background information" is simply not a "legal theory" for admissibility of the out-of-court statement that is yet "applicable to the case."

41

*State v. Johnson*, *supra*, at 370.

right to confrontation. The court of appeals erred to conclude otherwise.

## HARMLESS ERROR ANALYSIS

The court of appeals correctly identified any Confrontation Clause error to be of constitutional dimension, and therefore (because not "structural"), subject to a constitutional harm analysis.[42] In *Scott v. State*,[43] this Court comprehensively described how appellate courts should undertake such a harm analysis:

> In determining specifically whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt . . . the following factors are relevant: 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case. As the court of appeals rightly noted, the emphasis of a harm analysis pursuant to Rule 44.2(a) should not be on "the propriety of the outcome of the trial." That is to say, the question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict–whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, *inter alia*, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error

---

[42]

*Langham v. State*, *supra*, at 114, citing TEX. R. APP. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.").

[43]

227 S.W.3d 670 (Tex. Crim. App. 2007).

moved the jury from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.[44]

Here, the court of appeals declared any *Crawford* error to be harmless simply because it found that the evidence was "legally and factually sufficient, even in the absence of statements of the confidential informant, to support the finding of guilt."[45] But as we expressly observed in *Scott*, and now reiterate, in the context of an examination for harm, *vel non*, when evidence is erroneously admitted in violation of *Crawford*, the question for the reviewing court is not whether the jury verdict was supported by the evidence, even discounting the erroneously admitted evidence. The court of appeals erred to conduct such a truncated harm analysis. Rather than perform the proper harm analysis ourselves, however, we will remand the cause to the lower court to conduct that analysis in the first instance.

## CONCLUSION

The judgment of the court of appeals is reversed, and the cause is remanded to that court for a proper harm analysis.

Delivered:     March 3, 2010
Publish

---

[44]

   *Id*. at 690-91 (footnotes and internal quotation marks omitted).

[45]

   *Langham*, *supra*, at 114.