

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00436-CR

DAVID LEE MALONE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant David Lee Malone appeals his conviction for murder.  We affirm.

The record shows that Appellant intervened in a fight between his sister and his father, George Malone, and that he repeatedly kicked and punched his father in the head, causing brain injury to which the eighty-two-year-old man succumbed after a week and a half in the hospital.  A jury found Appellant guilty

---

[1]*See* Tex. R. App. P. 47.4.

of murder and assessed his punishment at ninety-nine years' confinement; the trial court sentenced him accordingly. Appellant brings six issues on appeal.

## Protective Order Evidence

In his first issue, Appellant contends that the trial court abused its discretion by admitting evidence that George had sought a protective order against him because the evidence was "tantamount" to extraneous offenses.

Appellant's objections in the trial court, however, raised only hearsay and relevancy grounds. An objection preserves only the specific ground cited. Tex. R. App. P. 33.1(a)(1)(A); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997). Appellant's hearsay objection obviously does not comport with his claim that the trial court erred by admitting evidence of extraneous offenses. *See, e.g., Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993), *cert. denied*, 510 U.S. 1215 (1994) (holding that hearsay and relevancy trial objections did not preserve a rule 404(b) extraneous offense claim on appeal).

Further, the court of criminal appeals has made it clear that relevancy objections do not preserve extraneous offense claims for review. *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000); *see Starn v. State*, No. 02-07-0039-CR, 2008 WL 902792, at *2 n.13 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op., not designated for publication); *Bradshaw v. State*, No. 02-06-00194-CR, 2006 WL 3334326, at *1

2

(Tex. App.—Fort Worth Nov. 16, 2006, no pet.) (mem. op., not designated for publication); *Ashford v. State*, No. 02-04-00594-CR, 2006 WL 908754, at *6 (Tex. App.—Fort Worth Apr. 6, 2006, pet. ref'd) (mem. op., not designated for publication).

Article 38.36(a) of the code of criminal procedure provides that

[i]n all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Tex. Code Crim. Proc. Ann. art. 38.36(a) (West 2005).[2]  As the court of criminal appeals acknowledged in *Garcia v. State*, "The nature of the relationship—such as whether the victim and the accused were friends, were co-workers, were married, estranged, separated, or divorcing—is clearly admissible under this Article."  201 S.W.3d 695, 702 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1224 (2007).

To the extent that Appellant argues the evidence should have been excluded on relevancy grounds, we hold that it was within the trial court's discretion to conclude that evidence that George had sought a protective order against the defendant on trial for George's murder was relevant to a number of

---

[2]Evidence that is otherwise admissible under this article is still subject to the limitations provided by rule of evidence 404(b).  We do not address whether there was a rule 404(b) violation in this case because, as indicated above, Appellant did not preserve that issue for review.

material issues in the case—including the facts and circumstances surrounding the killing, the prior relationship between George and the defendant, the latter's state of mind, and the identity of the killer.[3] Accordingly, we overrule Appellant's first issue.

**Confrontation Clause**

In his second issue, Appellant claims that the trial court erroneously admitted testimonial hearsay in violation of the Confrontation Clause when it allowed an emergency medical technician (EMT) who treated George at the scene to testify that when she asked George about one of his injuries, he replied, "He kicked me." Alternatively, Appellant argues that if this testimony did not violate his rights under the Confrontation Clause, the trial court abused its discretion by admitting it because it was inadmissible hearsay.

Although the State addressed Appellant's Sixth Amendment claim at trial, in its brief it addresses only the hearsay argument, countering it by citing the medical diagnosis exception to the hearsay rule found in rule 804(4).[4] We agree with the State that this exception applies to George's response to the EMT's question about how he became injured. *See Bautista v. State*, 189 S.W.3d 365,

---

[3]Appellant took the stand in his own defense and testified that his sister caused his father's fatal injuries, not he.

[4]The rule provides an exception from the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid. 803(4).

4

368 (Tex. App.—Fort Worth 2006, pet. ref'd); *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd). But this exception to the hearsay rule does not resolve the constitutional issue. *See De La Paz v. State*, 273 S.W.3d 671, 676, 680 (Tex. Crim. App. 2008).

The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069 (1965). In accordance with this constitutional right, out-of-court statements offered against the accused that are "testimonial" in nature are objectionable unless the prosecution can show that the out-of-court declarant is presently unavailable to testify in court and the accused had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004); *Langham v. State*, 305 S.W.3d 568, 575–76 (Tex. Crim. App. 2010); *Wall v. State*, 184 S.W.3d 730, 734–35 (Tex. Crim. App. 2006). The United States Supreme Court has yet to define the outer boundaries of a "testimonial" out-of-court statement, but it has identified three kinds of statements that could be regarded as "testimonial." *Langham*, 305 S.W.3d at 576; *Wall*, 184 S.W.3d at 735. They are ex parte in-court testimony or its functional equivalent—that is, materials such as affidavits, custodial examinations, prior testimony that the accused was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used

5

prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Melendez-Diaz v. Massachusetts*, ___ U.S.___, 129 S. Ct. 2527, 2531 (2009) (quoting *Crawford*, 541 U.S. at 51–52, 124 S. Ct. at 1364); *Langham*, 305 S.W.3d at 576; *Wall*, 184 S.W.3d at 735–36.

With respect to this last category of out-of-court statements, and in the particular context of statements made in response to police inquiries, in *Davis v. Washington* the Supreme Court elaborated that such a statement is "testimonial" if the circumstances, viewed objectively, show that it was not made "to enable police assistance to meet an ongoing emergency" and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006).

The court of criminal appeals has said that whether a particular out-of-court statement is testimonial is "a question of law." *Langham*, 305 S.W.3d at 576; *De La Paz*, 273 S.W.3d at 680. Although we defer to the trial court's resolution of credibility issues and historical fact, we review de novo the ultimate constitutional question of whether the facts as determined by the trial court establish that an out-of-court statement is testimonial. *Langham*, 305 S.W.3d at 576; *Wall*, 184 S.W.3d at 742. In making that judgment, we look to determine whether "the surrounding circumstances objectively indicate that the primary

6

purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Langham*, 305 S.W.3d at 576; *De La Paz*, 273 S.W.3d at 680.

Applying these principles to George's response to the EMT's on-the-scene question about the origin of his injuries, we conclude that the statement, "He kicked me" was not testimonial for Confrontation Clause purposes. The primary purpose behind this statement was not to provide testimony or develop facts for later litigation, but to provide information to medical personnel who were treating George's emergent medical needs on the scene[5]. Viewed objectively, George's statement to the EMT was made to enable assistance to meet an ongoing emergency and not to establish or to prove past events potentially relevant to later criminal prosecution. *See Davis*, 547 U.S. 813 at 822, 126 S. Ct. at 2273–74; *see also Vinson v. State*, 252 S.W.3d 336, 339–41 (Tex. Crim. App. 2008) (recognizing that statements made during an emergency are nontestimonial because they are not made primarily to develop facts for later litigation but to decide how to appropriately respond to the emergency). Therefore, because the statement was nontestimonial in nature and did not affect Appellant's rights under the Confrontation Clause, the trial court did not err by admitting it in evidence. Accordingly, we overrule Appellant's second issue.

---

[5]The court of criminal appeals has held that in this context, "primary" means "the purpose that is first among all competing purposes in rank or importance." *See Langham*, 305 S.W.3d at 579 (internal quotation marks omitted).

**Autopsy Photograph**

In his third issue, Appellant contends that the trial court abused its discretion by admitting an autopsy photograph. Specifically, he claims that State's Exhibit 57, a photograph depicting George's brain after it was removed from his body, was unfairly prejudicial and therefore should have been excluded under rule of evidence 403.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; s*ee Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 127 S. Ct. 664 (2006). Among the many factors a court may consider in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice are the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997); *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992). The

8

admissibility of photographs over an objection is within the sound discretion of the trial court. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). Autopsy photographs are generally admissible, unless they depict mutilation of the victim caused by the autopsy itself. *Salazar v. State*, 38 S.W.3d 141, 151 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001); *Santellan*, 939 S.W.2d at 172. The removal of internal body parts to portray the extent of injury to the body part itself is not considered mutilation caused by the autopsy because there is no danger that the jury would mistakenly attribute the removal of body parts to the defendant. *Salazar*, 38 S.W.3d at 151–52.

Dr. Shiping Bao, the medical examiner who performed the autopsy, testified that the photograph of George's brain would help him explain the injury that caused George's death. He testified that the photograph showed fatal hemorrhaging on the left occipital or rear lobe of the brain where blunt force trauma had caused it to strike the inside of the skull and that the resulting swelling had shifted the brain off its midline position. Thus, the photograph had probative value because it showed the extent of George's injury. Further, it was probative because it helped the jury understand how blunt force trauma—which other evidence showed came in the form of Appellant's having kicked George in the head—caused George's death.

Appellant discounts the probative value of the photograph by arguing that Dr. Bao merely used it to pinpoint the location of the injury, to which he and another witness, Dr. William Witham, had already testified. But the court of

9

criminal appeals has rejected the premise that visual evidence accompanying oral testimony is either cumulative of oral testimony or of insignificant probative value. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000). To the contrary, the court has recognized that visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions. *Id*.

Still, Appellant argues that whatever probative value the photograph has is minimal, at best, and that in any event, its probative value is substantially outweighed by the danger of unfair prejudice. We disagree.

Although the photo is graphic—it shows George's brain separated from the rest of his body—this factor alone does not require exclusion. *See Salazar*, 38 S.W.3d at 151, 153 (affirming admission of color slides showing brain removed from cranial cavity, victim's lung removed from body, and victim's open and dissected heart removed from body); *Legate v. State*, 52 S.W.3d 797, 806, 807 (Tex. App.—San Antonio 2001, pet. ref'd) (affirming admission of color photos depicting victim's heart removed from body).

Moreover, the medical examiner used the photograph to explain to the jury the fatal injury George sustained. Even photographs depicting "mutilation" by the medical examiner may still be admissible, and therefore excepted from the general prohibition, when the resulting picture (such as a photo of an organ that has been removed from the body) shows bruising or other damage that is

10

attributable to the defendant's actions, but was not visible externally, thereby making the photograph highly relevant to the manner of death. *Ripkowski v. State*, 61 S.W.3d 378, 392–93 (Tex. Crim. App. 2001), *cert. denied*, 539 U.S. 916 (2003); *see also Salazar*, 38 S.W.3d at 150–53.

Because the photograph at issue has probative value and is not unnecessarily gruesome, we hold that the danger of unfair prejudice does not outweigh its probative value. Thus, the trial court did not abuse its discretion in admitting it in evidence. Accordingly, we overrule Appellant's third issue.

## Lesser-Included Offenses

In his fourth issue, Appellant contends that the trial court erred by failing to include lesser-included-offense instructions on criminally negligent homicide and aggravated assault in the charge. At the charge conference, however, neither side proposed any special instructions or requested lesser-included-offense instructions, and the only objection Appellant raised was that the charge allowed for the jury to separate their votes on three paragraphs and therefore created the risk of a nonunanimous verdict.

The trial court need not submit a lesser-included instruction *sua sponte* if neither side requests one. *Delgado v. State*, 235 S.W.3d 244, 249–50 (Tex. Crim. App. 2007); *Mashburn v. State*, 272 S.W.3d 1, 15 (Tex. App.—Fort Worth 2008, pet. ref'd). Moreover, the defense may not claim error successfully on appeal due to the omission of a lesser-included-offense instruction if the defense did not request one. *Delgado*, 235 S.W.3d at 250; *Mashburn*, 272 S.W.3d at 15.

11

Appellant acknowledges that he did not object to the charge or request an instruction but argues that we should nonetheless apply the egregious harm standard of *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). This argument, however, suffers the same flaw in reasoning as that relied upon by the court of appeals in *Tolbert v. State*, 306 S.W.3d 776, 777 (Tex. Crim. App. 2010). In that case, the court of criminal appeals corrected the court of appeals for assuming error in a charge that did not contain a lesser-included-offense instruction that the appellant never requested.

> The court of appeals' opinion appears to assume that the trial court erred in not *sua sponte* instructing the jury on the lesser-included offense of murder and then addressed whether this jury-charge "error" egregiously harmed appellant under *Almanza* after rejecting the State's estoppel argument based on appellant's statement that she had "no objection" to the jury charge. This was error. Before applying *Almanza*'s egregious-harm standard for unobjected-to jury charge error, the court of appeals should have first decided whether it was "error" for the trial court not to *sua sponte* instruct the jury on the lesser-included offense of murder.

*Id.* at 779 (citations omitted).

The court went on to hold that the trial court had no duty to *sua sponte* instruct the jury on a lesser-included offense, that such an instruction was not law applicable to the case absent a request by the defense, and that, consequently, there was no jury-charge "error" to which *Almanza* would apply. *Id.* at 781–82. The same is true here.

Because the trial court had no duty to *sua sponte* instruct the jury on the lesser-included offenses when Appellant only now, for the first time, claims he

was entitled to such instructions, the trial court did not err by not including them in the charge.  Accordingly, we overrule Appellant's fourth issue.

## Prior Unadjudicated Bad Acts

In his fifth issue, Appellant complains of the State's cross-examining him about prior unadjudicated acts of family violence as set out below:

> Q. [by the district attorney]  Well, Mr. Malone, you said you've been in jail for DWI, correct?
>
> A.  Yes, sir.
>
> Q.  And your lawyer asked you several different times in several different ways what you've been arrested for and what you've been in jail for.  Do you remember that?
>
> A.  Sir?
>
> Q.  Remember, she asked you several times what you'd been in jail for?
>
> A.  Right.
>
> Q.  And you said DWIs, a couple of them.
>
> A.  Yes, sir.
>
> MS. WALKER:  Your Honor, I would object on that.  What I asked him for was what he had been convicted of, and I specifically was real clear about that, what he had been convicted of.

Actually, although counsel did ask her client about convictions, she also specifically asked, "were you ever in jail?" and "what have you been in jail for?"[6]

---

[6]Appellant testified on direct as follows:

> MS. WALKER [for the defense]:  Sir, were you ever in jail?

13

A. [Appellant]: Whoo—

MR. CHRISTIAN [the district attorney]: Objection, relevance, Your Honor.

MS. WALKER: Your Honor, it's a question about his history. It's going to come out on cross.

THE COURT: Overruled.

A. Yes, ma'am.

Q. (BY MS. WALKER) And what have you been in jail for?

A. I had a – – couple of DWIs, misdemeanors.

Q. Okay. Sir, dating back to 1983, does that sound familiar?

A. Exactly, yes, ma'am.

Q. 1984?

A. Yes, ma'am.

Q. Now, what else, sir, do you remember?

A. I've been to jail for?

Q. Well, I'm asking you any other convictions that you recall.

A. Two – – the DWIs, misdemeanors, – –

Q. Correct.

A. – – and I – – I'm wanting to say the last time I was in jail was probably – – whoo – – I'm wanting to say nine, ten years ago, I think I'm – –

Q. Okay.

A. I'm not exactly sure.

Q. All right. And so – –

14

And when the prosecutor objected to this inquiry, Appellant's counsel responded that the information was admissible and would "come out on cross."

After the trial court overruled Appellant's objection, the State's cross examination continued as follows:

Q. (BY MR. CHRISTIAN) Remember being arrested in Arlington for aggravated assault?

A. No, sir.

Q. That didn't happen?

A. Not that I recall, no.

Q. How about in Hood County for family violence assault, you get arrested for that?

A. I don't think so, not – – not to my knowledge.

Q. Well, don't you think that being arrested and put in jail for family violence assault is something that a person would remember?

---

A. But it was for a – – a – – a – –

Q. Sir, what I'm asking you about, though, are convictions. All right? And so you know you've got these DWI convictions, and that's all you've got?

A. Yes, ma'am.

Q. All right. And, of course, you've got this arrest.

A. Yes, ma'am. And I've had a PI, too, though.

Q. Public intox?

A. Yes, ma'am.

A. That's what I'm saying. I – – I can't remember. That's you know, that's why I don't say that I – –

Q. Who's – – who's Linda Gail Malone?

A. Who?

Q. Linda Gail Malone?

A. Linda Gail Malone? That was my first wife.

Q. Right. She wasn't the victim in one of these family violence assaults?

A. Not that I recall, no.

Q. Just forgot about it, if it happened?

A. If it happened, I don't remember it, no, sir.

Q. You would agree with me that – – nobody would be that better position[ed] to know if you've been arrested two times for assault, once a felony, other than you, you would know better than anybody.

MS. WALKER: Your Honor, objection. He's asked and answered twice now.

THE COURT: Overruled.

A. Well, I – – I – – I don't recall. I – – I'm – – I'm telling the truth here. I do not recall.

Q. (BY MR. CHRISTIAN) And you think it's – – is it possible that you could have been in jail for these assaults and you just don't remember? Is that what you're telling us?

A. I don't recall. Yes, sir. It – – I don't know. I really – – really don't know.

Q. All right. But do you recall the DWIs?

A. Yes, sir.

A complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). An objection preserves only the specific ground cited. Tex. R. App. P. 33.1(a)(1)(A); *Mosley*, 983 S.W.2d at 265; *Bell*, 938 S.W.2d at 54; *see also Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex. Crim. App. 1986) (holding that general objection is insufficient to apprise trial court of complaint urged and thus preserves nothing for review). Further, with a couple of exceptions for circumstances that are absent in this case, to preserve error, a party must continue to object each time the objectionable evidence is offered. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

The record before us shows that Appellant objected to the State's cross examination on two grounds: (1) that the prosecutor was mischaracterizing a question asked on direct and (2) that a question had been asked and answered. Appellant's claims on appeal assert that the trial court violated rules of evidence 403, 404(b), 608(b), and 609(a). These claims do not comport with the objections Appellant raised at trial. Accordingly, we overrule Appellant's fifth issue. *See Pena*, 285 S.W.3d at 464.

17

## Local Rules

In his sixth issue, Appellant asserts that his conviction should be reversed because the trial court violated one of its own local rules by admitting an aerial photograph that Appellant allegedly had not received before trial and that showed the same area as other aerial photographs admitted during trial without objection.

Appellant contends that the trial court violated Local Rule 7.3, which provides:

> At the time the parties report for trial they will deliver to the Court, the Court Reporter and the other parties a witness list and exhibit list and any motion in limine. Any witnesses or exhibits not shown on such list can be used at the trial only upon leave of the Court. Prior to commencement of trial all exhibits will be marked, exchanged and examined by counsel so that the trial will not be delayed by such examination.

355th (Tex.) Dist. Ct. Loc. R. 7.3 (Hood County).

Appellant claims he "never received" Exhibit 42, which we take to be a complaint that the provision in Local Rule 7.3 that "all exhibits will be marked, *exchanged* and examined by counsel" was not complied with. As pointed out by the State, the only evidence in the record that Exhibit 42 was not exchanged with counsel is Appellant's trial counsel's telling the trial court, "Your Honor, we object on the grounds we never received this document." But assuming without deciding that this is sufficient to show a violation of Local Rule 7.3, and putting aside for the moment the issue of harm, we are not sure we agree with Appellant's proposed remedy, which is a reversal of his conviction for murder.

18

Appellant has provided us no cases overturning criminal convictions on the basis of a local rule requiring similar "exchange and examination" of exhibits before trial. The two cases cited in Appellant's brief are original proceedings in which the appellants sought and were granted mandamus relief in civil cases. *See Dancy v. Daggett*, 815 S.W.2d 548 (Tex. 1991) (orig. proceeding); *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (1959) (orig. proceeding).[7]

We think mandamus is a radically different remedy than reversal of a criminal conviction. We need not decide that particular issue in this case, however, because no criminal conviction may be reversed for nonconstitutional error absent violation of a substantial right of the defendant. Tex. R. App. P. 44.2(b). Appellant does not allege that the trial court violated any provision of the federal or state constitution; only a local rule. Therefore the applicable harm analysis would be that for nonconstitutional error set out in rule 44.2(b), and, if there was error, it should be disregarded absent effect to Appellant's substantial rights. Tex. R. App. P. 44.2(b).

---

[7]In *Dancy*, the trial court conducted a hearing in a divorce action, knowing that the attorney representing the husband had to appear in another court. *See Dancy*, 815 S.W.2d at 549. The Texas Supreme Court found that the trial court had violated a local rule regarding conflicts in docket settings, which effectively denied the husband representation during the divorce hearing. The remedy sought and provided was mandamus relief, not reversal. In *Crane*, the Texas Supreme Court conditionally granted mandamus to require the trial court to examine the defendant's income tax return and determine which parts were relevant and material before requiring the defendant to produce the return for examination and copying by plaintiff. 328 S.W.2d at 440–41.

We have examined the complained-of photograph. It is a satellite photograph that is practically identical to other satellite photographs admitted at trial without objection. The only difference is that this particular satellite photograph has scaling and a compass to indicate directions. Appellant has not made any argument that admission of this photograph with these two additions has caused him harm while admission of other similar photographs without the additions have not. Having examined the complained-of exhibit and compared it with other similar exhibits and having examined the record as a whole, we hold that admission of the exhibit, even if it were error, had no effect on any of Appellant's substantial rights. Accordingly, we overrule Appellant's sixth issue.

## Conclusion

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 27, 2011

20