**Opinion filed November 18, 2010**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-09-00252-CR & 11-09-00253-CR

_____

### BENNY LEE MONTGOMERY, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause Nos. CR34857 & CR34858**

## M E M O R A N D U M   O P I N I O N

The jury convicted Benny Lee Montgomery of the offense of tampering with physical evidence[1] and the offense of possession of less than one gram of cocaine.[2] Finding the enhancement allegations to be true, the jury assessed punishment at confinement for forty years for the tampering offense and confinement for twenty years and a fine of $10,000 for the

---

[1]Our Cause No. 11-09-00252-CR and Trial Court Cause No. CR34857.

[2]Our Cause No. 11-09-00253-CR and Trial Court Cause No. CR34858.

possession offense. In the tampering case, we reverse and remand; in the possession case, we affirm.

*Issues*

Appellant presents three issues for review. In the first issue, he contends that the trial court abused its discretion in denying appellant's motions to suppress because police entered the motel room without a warrant and without consent. In the second issue, appellant argues that the trial court abused its discretion in admitting evidence from appellant's hospital visit. In his final issue, appellant argues that the trial court abused its discretion in admitting the portion of his medical records that revealed a diagnosis of substance abuse.

*Background Facts*

Midland Police Officer Dylan Hale was investigating a tip called in to Crime Stoppers regarding the sale of narcotics. The tipster identified a specific residence in Midland, two pickups, and women named "Rene" and "Sylvia" as being involved. Officer Hale then received information from a second tip that Rene was staying at the Luxury Inn in room number 6 or 7. Early in the morning on Saturday, January 26, 2008, Officer Hale drove to the Luxury Inn to follow up on the tip. When he arrived, there was a car parked in front of room number 5, but no vehicle parked in front of room number 6 or 7. Officer Hale left but, shortly thereafter, passed one of the pickups identified in the tip. Officer Hale turned around and followed the pickup to the Luxury Inn. The driver of the pickup got out and knocked on the door to room number 5. Officer Hale identified the driver as Timothy Allen Buretz. Buretz told the officer that he was trying to wake up his niece, "Rene Wood," so he could drive her to work. The passenger in the pickup, who seemed nervous, approached Officer Hale and identified herself as Mary Patricia Scott. A female who had been in room number 5 opened the door and came outside, leaving the door open. She identified herself as "Rene Loudd." Buretz revealed that he had given Officer Hale an incorrect last name for his niece. At that time, Officer Hale called for backup, patted down Buretz, and placed Buretz in handcuffs for safety reasons. Loudd informed Officer Hale that "Benny" was still in the motel room. Sergeant Land arrived and "posted up on the door for officer safety." Dispatch later advised that Scott had an outstanding arrest warrant from Liberty County for insufficient funds. Officer Hale told Scott she was under arrest and asked Scott if she had anything illegal on her. Scott told the officer that she had a "one hitter" (drug paraphernalia) in her pocket. According to Officer Hale, "At that point it was apparent the severity of the

situation was growing." Officer Hale asked another officer to watch Scott while he checked the room.

Officer Hale and Sergeant Land yelled for "Benny" to come out "now" with his hands up, and then they entered the room with their pistols drawn to conduct a "security sweep" and to keep the occupant of the motel room from "barricading himself" or "destroying evidence." They proceeded to the bathroom, and Officer Hale opened the bathroom door. Inside the bathroom, they observed a naked man sitting on the toilet. Officer Hale ordered the man (appellant) to get out of the bathroom and not to flush the toilet again. Appellant, instead, attempted to flush the toilet and stuck one of his hands, which contained something white, down in the toilet. Appellant also put something white in his mouth, chewed it, and swallowed it. A scuffle ensued, and appellant was arrested for tampering with evidence. In the toilet, Officer Hale observed cloudy water and a "corner baggie." When asked what he had swallowed, appellant told the officers, "It was only residue." After placing appellant under arrest, Officer Hale obtained verbal consent from Loudd to search the motel room, which had been rented in her name. During the search of the room, three rocks of crack cocaine, weighing .22 grams, were found in the nightstand and a crack pipe was found in appellant's jacket.

### Motions to Suppress

The record shows that appellant filed a motion in each case to suppress evidence relating to and stemming from his unlawful detention and arrest and from the illegal search that was conducted without probable cause or reasonable suspicion. The trial court held a hearing on the suppression issues and subsequently entered a letter order denying appellant's motion to suppress; however, the only cause number shown on the letter order was that of the possession case. In the letter order, the trial court made findings of fact and concluded that "the officers had reasonable suspicion that unlawful narcotic activity certainly was underway in room 5" and that "the entry into the room by police and the arrest of [appellant] was lawful." Though appellant may not have received a pretrial ruling on his motion to suppress in the tampering case, he did preserve the suppression issue by obtaining a ruling during the trial on the merits.[3] At trial, prior to any testimony concerning appellant or the officers' entry into the motel room, appellant

---

[3]We note that, prior to the filing of a supplemental clerk's record containing the letter order, the State had argued that appellant failed to preserve his suppression issues because he failed to obtain a ruling.

objected, asserting "the same objections" as he had made at the pretrial hearing. The trial court overruled appellant's objection and permitted him to have a running objection.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). First, we afford almost total deference to a trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. The trial court is entitled to believe or disbelieve all or part of a witness's testimony – even if that testimony is uncontroverted. *Id.* Second, we apply a de novo standard of review to a trial court's application of the law of search and seizure to the facts, and we will sustain the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447-48.

*A. Initial Entry/Sweep.*

An occupant[4] of a motel room is entitled to constitutional protections against unreasonable searches and seizures with respect to the motel room. *Stoner v. California*, 376 U.S. 483 (1964); *Moberg v. State*, 810 S.W.2d 190, 194 (Tex. Crim. App. 1991). The entry into a residence (or motel room) by police officers constitutes a "search" for purposes of the Fourth Amendment. *Valtierra*, 310 S.W.3d at 448. When such an entry is made without a warrant, it is presumed to be unreasonable unless it falls within an exception to the warrant requirement. *Id.* In order to justify such a warrantless entry or search, the State must show that it had consent or that both probable cause and exigent circumstances existed at the time of the entry or search. *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006); *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991). Three categories of exigent circumstances have been recognized by the Texas Court of Criminal Appeals: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). If the State does not establish both probable cause and exigent

---

[4]We note that the evidence shows appellant was an overnight guest in the motel room and that the State has not challenged appellant's standing to contest the entry.

circumstances, the warrantless entry cannot withstand judicial scrutiny under the Fourth Amendment. *Id.* at 685-86.

The well-established probable cause standard that applies to a warrantless entry or search of a specific location is that probable cause exists "when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Parker*, 206 S.W.3d at 597. Probable cause to cross the threshold of a private residence may point to the location, but not necessarily a specific person. *Id.*

In this case, the police were in the initial stages of investigating a Crime Stoppers' tip regarding the sale of narcotics when Officer Hale went to the motel. He did not have probable cause for a search warrant based on that tip, and the facts and circumstances leading up to the officers' entry did not give them probable cause to enter the room. *See State v. Triana*, 293 S.W.3d 224 (Tex. App.—San Antonio 2009, pet. ref'd) (no probable cause where police conducting a narcotics investigation entered motel room through open door after (1) seeing occupant abruptly cease conversation and enter motel room as police approached and (2) hearing the toilet flush); *see also State v. Steelman*, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002) (anonymous tip does not constitute probable cause). The arrest of the passenger of the pickup outside the motel room did not give the officers probable cause to enter the room. Nothing connected the passenger to the room. Furthermore, nothing in our statutes or constitutional provisions requires any citizen to respond to a knock on his door by opening it. *Rodriguez v. State*, 653 S.W.2d 305, 307 (Tex. Crim. App. 1983). The facts and circumstances known to the officers in this case would not lead a reasonably prudent person to believe that narcotics would be located in the motel room. Because probable cause was not present, we need not reach the second prong of the test requiring exigent circumstances. The officers' warrantless entry into the motel room occupied by appellant was made without probable cause and without consent and was, therefore, unreasonable.

In addition to asserting that exigent circumstances existed, the State asserts that the entry was justified as a protective sweep. A "protective sweep" is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). The Fourth Amendment permits a limited protective sweep "in

5

conjunction with an in-home arrest" when the officer possesses a reasonable belief that the area to be swept harbors an individual posing a danger to those on the arrest scene. *Buie*, 494 U.S. at 337; *Reasor*, 12 S.W.3d at 816. At the time of the sweep in this case, the only person that had been arrested was Scott, the passenger in the pickup. Scott was not arrested in the motel room, and the State failed to connect her to the room or its occupants. We hold that Scott's arrest outside the motel room did not justify an entry into or a protective sweep of the room or bathroom. *See Valtierra*, 310 S.W.3d at 452 (stating that court of appeals was correct in concluding that "protective sweep" did not justify officer's walk down hallway).

Accordingly, the trial court erred in denying appellant's motion to suppress the evidence obtained as a result of the initial police entry into and sweep of the motel room.

### B. Subsequent Search by Consent.

After entering the motel room, conducting a protective sweep, and arresting appellant for tampering with evidence, police obtained Loudd's consent to search the room. The cocaine that appellant was convicted of possessing was found during that consensual search. As the person who rented the motel room, Loudd had actual authority to consent to the search. Appellant assumed the risk that Loudd could consent to a search of the room, and he "may not complain of that search under the Fourth Amendment." *See Hubert v. State*, 312 S.W.3d 554, 561 (Tex. Crim. App. 2010); *see also Luna v. State*, 268 S.W.3d 594, 604 n.26 (Tex. Crim. App. 2008). Furthermore, when the State's exhibits – including the cocaine, the crack pipe, and the lab report – were offered into evidence, appellant's counsel stated, "No objection" to each exhibit. An affirmative statement of "no objection" to the admission of previously challenged evidence waives any error in the admission of that evidence. *Jones v. State*, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992).

### C. Harm Analysis.

Having found error in the admission of evidence regarding the officers' initial warrantless entry into the motel room, we must next consider, pursuant to TEX. R. APP. P. 44.2(a), whether appellant was harmed by the constitutional violation. *Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008). Reversal is required unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Chapman v. California*, 386 U.S. 18, 24 (1967); Rule 44.2(a). If there is a reasonable likelihood that the error materially affected the jury's deliberations, the error was not harmless. *Jones v. State*, 119 S.W.3d 766, 777 (Tex.

Crim. App. 2003). We must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Neal*, 256 S.W.3d at 284. In determining the harmfulness of the admission of evidence in violation of the Constitution, the Court of Criminal Appeals has declared the following factors to be relevant: (1) the importance of the evidence to the State's case; (2) whether the erroneously admitted evidence was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence on material points; and (4) the overall strength of the prosecution's case. *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006). We must also consider any other factor revealed by the record that may shed light on the probable impact of the trial court's error on the minds of average jurors. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

### 1. Tampering Conviction.

We cannot determine beyond a reasonable doubt that the erroneous admission of evidence obtained from the officers' initial entry, including Officer Hale's testimony as to what he observed when he entered the motel room, did not contribute to appellant's conviction for tampering. That evidence was important to the State's case. The only other evidence that appellant tampered with evidence came from the DVD that was recorded from Officer Hale's in-car camera. The DVD, which was admitted after appellant's counsel again affirmatively stated that he had no objection to the exhibit, contains audio – but no video – of the officers' entry and their scuffle with appellant. The DVD does not show the motel room or what occurred inside the room and bathroom. We cannot say beyond a reasonable doubt that Officer Hale's erroneously admitted testimony explaining what occurred as the officers entered the motel room did not contribute to the verdict. In light of the other evidence, the erroneously admitted testimony likely had a material effect on the jury's deliberations and appellant's conviction for tampering with physical evidence. Consequently, we sustain appellant's first issue in Cause No. 11-09-00252-CR.

### 2. Possession Conviction.

Analyzing harm in the possession case poses a more difficult question. The cocaine was not obtained during the officers' illegal entry; it was obtained during a subsequent search conducted with Loudd's consent. The inadmissible evidence was not important to the State's case against appellant for possession. The cocaine, the crack pipe, and the chemist's lab report

7

regarding the testing of the cocaine were all admitted upon appellant's affirmative statement that he had no objection to their admission. In the DVD, which was played for the jury, Loudd told Officer Hale that appellant had had a sack of cocaine, that he had given her a piece of cocaine wrapped in plastic, and that she was not sure what appellant had done with any of the cocaine after her uncle knocked on the door.[5] Appellant's statement regarding "residue" can be heard on the DVD. The evidence also reflected that the crack pipe was found in appellant's jacket. In light of the unimportance of the inadmissible evidence to the prosecution for possession and the other overwhelming evidence that appellant exercised care, custody, and control over the cocaine, we find beyond a reasonable doubt that the erroneous admission of evidence relating to the initial warrantless entry into the motel room did not contribute to appellant's conviction or punishment for the offense of possession of cocaine. Consequently, we overrule appellant's first issue in Cause No. 11-09-00253-CR.

*Evidence from Hospital Visit*

In his second issue, appellant argues that the trial court abused its discretion in admitting evidence from appellant's hospital visit because the doctors and nurses acted as law enforcement agents. The trial court overruled appellant's objections to the testimony of the physician who treated appellant after his arrest, the testimony of the hospital's medical records custodian, and the introduction of appellant's medical records.

The record reflects that, because of the struggle and appellant's ingestion of something, appellant was taken to the Midland Memorial Hospital Emergency Department for a medical clearance prior to being taken to jail. The treating physician testified that the police explained what had happened at the scene and requested a medical clearance. In order to medically clear appellant, the hospital staff obtained a medical history from him, conducted a physical exam, and performed a urine drug screen. The results of the urinalysis were positive for marihuana and cocaine. According to the physician, appellant said that he used crack cocaine, that he had smoked three or four rocks that day, and that he had swallowed cocaine. The physician testified that he was not acting as an agent for law enforcement and that the police did not dictate the actions of the hospital staff.

Appellant relies on *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), and *Miranda v. Arizona*, 384 U.S. 436 (1966), in support of his contentions. We agree with the trial court's

---

[5]We note that Loudd did not testify at appellant's trial.

conclusion that the cases cited by appellant are not controlling in this case. In *Ferguson*, the Supreme Court held that the warrantless, nonconsensual drug-testing performed on pregnant women at a state hospital pursuant to local policy in order to obtain evidence of criminal conduct for law enforcement purposes constituted an unreasonable search. 532 U.S. 67. In the present case, the tests were not performed for law enforcement purposes but for the purpose of medical treatment after appellant had ingested an unknown substance. *See Murray v. State*, 245 S.W.3d 37 (Tex. App.—Austin 2007, pet. ref'd) (testing of DWI arrestee's blood was performed by hospital staff for purpose of medical treatment). Furthermore, the Texas Court of Criminal Appeals has specifically recognized that not all government workers must be ready to administer *Miranda* warnings and that *Miranda* has been held to be inapplicable to questioning by medical personnel. *Wilkerson v. State*, 173 S.W.3d 521, 528 (Tex. Crim. App. 2005). The evidence in this case does not indicate that the hospital staff acted as law enforcement agents or at the behest of law enforcement. Appellant's second issue is overruled.

*Redaction of Medical Records*

In his third issue, appellant argues that the trial court abused its discretion in allowing the medical records to be introduced without redacting the records to delete the doctor's diagnosis of "Cocaine abuse" and "Drug abuse – marijuana." The record shows that appellant objected to these statements as being irrelevant and unfairly prejudicial under TEX. R. EVID. 403 and 404(b). We agree that the doctor's diagnosis constituted inadmissible character-conformity evidence and that the trial court abused its discretion in refusing appellant's request to redact the medical records. *See* TEX. R. EVID. 404; *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991).

When the error in the admission of evidence is not a constitutional error, it is subject to harm analysis under TEX. R. APP. P. 44.2(b). *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Under Rule 44.2(b), nonconstitutional errors that do not affect a defendant's substantial rights must be disregarded. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In light of the record as a whole, we cannot conclude that the error in the admission of the doctor's diagnosis substantially affected the jury's verdict in this case. There was other evidence, including the results of the urinalysis and appellant's statements to the hospital staff that he used crack cocaine and had smoked three or four rocks that day, revealing appellant's drug use. Furthermore, the doctor's diagnosis was not emphasized or relied upon by

the prosecutor.  We hold that the error must, therefore, be disregarded under Rule 44.2(b). Appellant's third issue is overruled.

*Conclusion*

In Cause No. 11-09-00252-CR, the judgment of the trial court is reversed, and the cause is remanded to the trial court.  In Cause No. 11-09-00253-CR, the judgment of the trial court is affirmed.

JIM R. WRIGHT

CHIEF JUSTICE

November 18, 2010

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.