Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-11-00080-CR

Moses R. **VELA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-11095
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:       Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice

Delivered and Filed:  June 20, 2012

AFFIRMED

Moses R. Vela appeals his murder conviction, arguing that his right to confront the witnesses against him was violated when a surrogate expert was permitted to testify regarding the results of an autopsy report.  We affirm the judgment of the trial court.

### BACKGROUND

By all accounts, Vela and the victim, Marcos Cervantes, were good friends.  On the evening of July 31, 2009, Vela and Cervantes, along with several other people, spent the night

together; some people were using cocaine, marijuana, and Xanax. The next day, an altercation ensued between Cervantes and another male. Thereafter, Cervantes challenged Vela to a fight outside. Vela, who weighed half as much as Cervantes, feared that Cervantes would stab him. Although Cervantes was known to carry a knife, and several witnesses overheard him threaten Vela with a knife, no witness actually saw a knife. Cervantes began to chase Vela, and Vela, fearing for his life, fired a .45 mm handgun in Cervantes's direction one time. Paramedics pronounced Cervantes dead at the scene. The next day, Bexar County Medical Examiner Masahiko Kobayashi performed a forensic examination of Cervantes's body.

Vela was charged with murder. Prior to trial, a hearing was held to determine whether the autopsy report completed by Dr. Kobayashi could be admitted through a surrogate witness, Dr. Randall Frost, Chief Medical Examiner for Bexar County. The defense objected to both the autopsy report and any surrogate testimony as testimonial hearsay. The defense also argued that the State had not met its burden to show that reasonable efforts were made to secure Kobayashi's attendance at trial. The State replied that Kobayashi would be out of the country through trial and that a surrogate pathologist would review the autopsy and photographs and then give his own independent opinion as to the cause of death. The trial court agreed with the State that the surrogate pathologist could testify as to his own independent expert opinion as to the cause of death.

At trial, Frost testified that in his opinion the cause and manner of Cervantes's death was a gunshot wound to the torso. Frost based his opinion on a review of the case file, including the autopsy report, the medical examiner's investigative crime scene report, and the autopsy and crime scene photographs. Although Frost was not present when the autopsy was performed, he stated that as the Chief Medical Examiner for Bexar County, he supervises five pathologists and

trusts that they follow certain protocols he has put in place when performing autopsies. Frost additionally stated that Kobayashi's autopsy report was reviewed and affirmed by five pathologists, including himself before it was issued. On cross-examination, Frost admitted that he did not personally perform the autopsy, take any photographs, or collect any of the specimens that were sent to the toxicologist. The autopsy report was not admitted into evidence.

The jury rejected Vela's theory of self-defense, and found Vela guilty of murder as charged in the indictment. During punishment, the jury was instructed on the law of "sudden passion" and made a finding of sudden passion. The jury assessed punishment at twenty years' confinement.

## DISCUSSION

On appeal, Vela complains that the trial court erred in admitting the testimonial findings and conclusions of Dr. Kobayashi through the in-court testimony of Dr. Frost.

### *Standard of Review*

We review the admission of evidence by the trial court for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). If the trial court's decision is within the zone of reasonable disagreement, we will not disturb it on appeal. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). When deciding whether the admission of certain statements violated a defendant's right to confrontation, however, we review the trial court's ruling de novo. *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006).

### *Applicable Law — Confrontation Clause*

The Sixth Amendment's Confrontation Clause provides that all criminal defendants have the right to confront any witnesses against them. U.S. CONST. amend. VI. In *Crawford v. Washington*, the United States Supreme Court held that testimonial hearsay statements of

witnesses absent from trial are admissible over a Confrontation Clause objection only when the declarant has been shown to be unavailable and where the defendant has had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 57-60 (2004). In *Melendez–Diaz v. Massachusetts*, the Court held a forensic analyst's report created for criminal prosecution is testimonial in nature, and therefore subject to the Confrontation Clause. 557 U.S. 305, 129 S.Ct. 2527, 2532 (2009). The Court observed that confrontation of the analyst was necessary to permit defendants to expose analysts who may be incompetent or even dishonest. *Id*. at 2536-37 ("Forensic evidence is not uniquely immune from the risk of manipulation."). Moreover, "the prospect of confrontation will deter fraudulent analysis in the first place." *Id*. at 2537.

The Court recently addressed the issue of "surrogate testimony" with respect to the introduction of forensic reports in *Bullcoming v. New Mexico*. ____ U.S. ____, 131 S.Ct. 2705 (2011). Bullcoming was charged with aggravated driving while intoxicated. *Id*. at 2711. The forensic analyst assigned to test Bullcoming's blood sample created a report in which he certified that certain protocols were followed during testing. *Id*. At trial, the State sought to admit the report; however, the State called a different analyst, who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on Bullcoming's blood sample. *Id*. at 2711-12. The Court granted certiorari to address whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification. *Id*. at 2713. The Court held that Bullcoming's right to confrontation was violated when the trial court permitted the testimonial statement of the original analyst to enter into evidence through the in-court testimony of the surrogate analyst. *Id*. As

Justice Sotomayor noted in her concurring opinion, however, *Bullcoming* did not involve a situation where the surrogate expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence. *Id*. at 2722 (Sotomayor, J., concurring in part).

*Analysis*

Vela contends that even though the autopsy report was not admitted, he had a right to confront Kobayashi after Frost stated that he and four other physicians "affirmed" Kobayashi's autopsy report, thus telling the jury that Kobayashi also concluded that the cause and manner of death was a gunshot wound to the torso. In other words, Vela maintains that although Frost shared his own opinion at trial, he also introduced the testimonial opinions of Kobayashi and four other doctors. *See Bullcoming*, 131 S.Ct. at 2713 (the Confrontation Clause prohibits the testimonial statement of one witness to enter into evidence through the in-court testimony of a second person). We need not decide, however, whether the trial court erred in allowing Frost to testify that he affirmed Kobayashi's autopsy report because we conclude that the error, if any, was harmless.

A Confrontation Clause violation is constitutional error subject to a harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). Under Rule 44.2(a), we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Vela's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). We consider the following factors in determining whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt: (1) how important the out-of-court statement was to the State's case, (2) whether the statement was cumulative of other evidence, (3) the presence or absence of evidence

corroborating or contradicting the out-of-court statement on material points, and (4) the overall strength of the State's case. *Langham*, 305 S.W.3d at 582.

In conducting a Rule 44.2(a) harm analysis, we do not focus on the propriety of the jury's verdict. *Id.* Nor does the analysis turn on whether, excluding the improperly admitted evidence, the remaining evidence was legally sufficient to convict. *Id.* The *Langham* Court explained the proper harm analysis as follows:

> [T]he question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, *inter alia*, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.

*Id.* (quoting *Scott v. State*, 227 S.W.3d 670, 690-91 (Tex. Crim. App. 2007)).

The application of these factors in the instant case leads us to conclude beyond a reasonable doubt that the admission of Frost's testimony regarding the autopsy report did not contribute to Vela's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Langham*, 305 S.W.3d at 582. Vela testified in his own defense at both guilt/innocence and punishment. He admitted shooting Cervantes in self-defense. Additionally, three witnesses testified that during the confrontation between Vela and Cervantes, Vela ran back into the house to secure a .45 mm firearm, and then returned outside to shoot Cervantes. Law enforcement also testified that Cervantes was pronounced dead at the scene. Further, the State did not emphasize the autopsy

during closing arguments. In fact, the only mention of the autopsy came from the defense, who stated that Frost had no personal knowledge of the autopsy and that no details were provided to the jury regarding the autopsy. The cause of death, however, was not in dispute at trial. Vela neither challenges the evidence of the cause of Cervantes's death nor suggests any other cause. In short, no other evidence contradicted Frost's testimony, and a great amount of evidence supported it. On this record, we cannot conclude there is a reasonable possibility that Frost's testimony moved the jury from a state of non-persuasion to a state of persuasion. *See Langham*, 305 S.W.3d at 582 (quoting *Scott*, 227 S.W.3d at 690-91). Accordingly, we overrule Vela's sole issue on appeal and affirm the judgment of the trial court.

Phylis J. Speedlin, Justice

Do not publish