**Opinion issued March 17, 2016.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00377-CR

_____

**HENRY GUEDES PAGES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 8**
**Travis County, Texas[1]**
**Trial Court No. C-1-CR-14-400141**

---

## MEMORANDUM OPINION

A jury convicted appellant, Henry Guedes Pages, of the misdemeanor

offense of failure to stop and provide information in an accident involving damage

---

[1]	The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. Misc. Docket No. 15-9054 (Tex. Mar. 24, 2015); *see* TEX. GOV'T CODE ANN. § 73.001 (West. Supp. 2015) (authorizing transfer of cases).

to a vehicle,[2] and assessed a $1000 fine as punishment. In two issues on appeal, appellant contends the trial court erred in overruling (1) his pretrial motion to suppress, and (2) his Confrontation Clause objections to his wife's out-of-court statements. We reverse and remand.

## BACKGROUND

Larry Hall was driving his new Harley Davidson motorcycle with custom green paint down the interstate highway in Austin around 1:00 a.m. His wife, Louann, was riding behind Hall on the motorcycle, and just ahead of them on his own motorcycle was their friend, Richard Waters.

Near the intersection of IH-35 and Slaughter Lane, Larry slowed down to turn into an RV park. He turned on the bike's blinker, and he and his wife signaled a right turn with their hands. Just as they were preparing to turn, the Halls saw headlights "getting brighter and brighter" behind them. Larry warned Louann, "Hold on, he's going to hit us." Neither the Halls nor Waters ever heard anything to indicate that the approaching car tried to slow down; no "screeching of brakes, nothing." The car hit the motorcycle from the rear and both of the Halls were thrown to the side of the road.

The impact was hard, and the bike's hard bags detached and skidded down the road. The motorcycle fell about 20 to 30 feet from where it was hit. Louann lay

---

[2] *See* TEX. TRANSP. CODE ANN. §§ 550.022(a),(c), 550.023 (West 2011).

about ten feet from the motorcycle, with road rash on her right leg, thigh, and hip. Larry also suffered road rash and abrasions to his arms. Waters, who had been ahead of the Halls, stopped and turned around when he saw parts of his friends' motorcycle fly past him.

Only one car was behind Waters on the road. It drove into the next lane to get around the debris, then took off. Waters stopped to make sure his friends were okay, but Larry told him, "Follow him; he's driving; he's taking off." Waters followed the car as it proceeded through a car dealership and into a residential area. He never lost sight of it, and it was still the only car on the road. As the car slowed to turn into a neighborhood, Waters was able to get close enough to see the make, model, color, and license-plate number. Unable to write the number down at the time, he repeated the number in his head so that he could report the information to the police.

The lead officer on the case, Katy Connor, was initially given the plate number "MXY 671," but this plate belonged to a car in Dallas, and did not fit Waters's description of the car he followed. Police tried one letter different— "NXY 671"—and found a car registered nearby that fit the description. This car was registered to appellant at 7309 Thannas Way.

Police officers proceeded to that address, where they saw a car in the driveway that matched the description given by Waters. The front license plate was

damaged. Paint transfer on the car matched the Halls' motorcycle's custom-green paint job.

When the officers knocked at the front door, appellant's wife answered. She was surprised to hear that the car was damaged, and stepped outside to see it. She remarked that her husband had been driving that night, but had not mentioned a collision when he came home. She also stated that the front of the car had no damage earlier that day.

When officers indicated that they wanted to speak to her husband, she went to get him while the officers waited in the living room. Officer Connor did not recall if the police asked for permission to enter the house, but knew that they did not force their way in.

When appellant appeared, Officer Connor asked to see his driver's license. Appellant was swaying, his eyes were bloodshot, and his breath smelled of alcoholic beverages. After fumbling with his wallet, appellant handed the officers his credit card.

Appellant first told Officer Connor that he had just returned from a Dollar General store located at an intersection that does not exist. Later, however, he admitted that he had gone to a friend's house to watch a fight, and had returned home around 1:30 a.m. Appellant told Connor that "[h]e didn't remember feeling a collision or seeing the vehicle in front of him."

Officer Connor arrested appellant after their conversation ended.

## CONFRONTATION CLAUSE

In his second point of error, appellant contends the trial court erred in overruling his Confrontation Clause objection to the "admission of his wife's out-of-court statements because her statements were testimonial, there was no opportunity to cross-examine her, and invocation of the spousal privilege[3] did not waive or forfeit appellant's rights under the Confrontation Clause."

**Standard of Review and Applicable Law**

The Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Sixth Amendment Confrontation Clause applies to out-of-court statements introduced at trial. *Crawford v. Washington*, 541 U.S. 36, 50–51, 124 S. Ct. 1354, 1364 (2004). Testimonial statements of a witness who is absent from trial cannot be admitted unless the witness was unable to testify and the defendant had a prior opportunity for cross-examination. *Id.* at 53–54, 124 S. Ct. at 1365. We review de novo a trial court's ruling on a Confrontation Clause objection. *See, e.g.*, *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999) (when reviewing the admissibility of out-of-court statements over a Confrontation Clause objection, courts should

---

[3] "In a criminal case, the spouse of the accused has a privilege not to be called as a witness for the state." TEX. R. EVID. 504(b)(1).

independently review whether the evidence satisfies the demands of the Constitution); *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

**Error Analysis**

In *Crawford*, the declarant of an out-of-court statement, who was the defendant's wife, did not testify at the defendant's trial after asserting the spousal privilege. 541 U.S. at 40, 124 S. Ct. at 1357. The trial court allowed the State to play the defendant's wife's tape-recorded statement to the police describing the crime, even though the defendant had no opportunity for cross-examination. 541 U.S. at 38, 124 S. Ct. at 1356–57. The United States Supreme Court concluded that the trial court had improperly allowed the admission of the wife's testimonial statement against the defendant. 541 U.S. at 68, 124 S. Ct. at 1374. The Supreme Court held that admission of a witness's testimonial statement is a violation of the defendant's Sixth Amendment right of confrontation when the declarant is unavailable to testify and the defendant had no prior opportunity to cross-examine the declarant. 541 U.S. at 68, 124 S. Ct. at 1374. The Supreme Court further stated that "[w]hen a declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." 541 U.S. at 59 n.6, 124 S. Ct. at 1369 n.6.

This case is indistinguishable from *Crawford*. Appellant's wife did not testify at trial because of her spousal privilege, the State was permitted to introduce

6

her out-of-court statements to police, and the defendant had no prior opportunity to cross-examine her. Thus, admission of appellant's wife's out-of-court statements violated his rights under the Confrontation Clause.

**Harm Analysis**

Indeed, the State does not even argue that appellant's wife's statements were properly admitted. Instead, the State contends only that "[a]ny error in admitting the wife's out-of-court statements was harmless." Pursuant to rule 44.2(a), "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse [the assessment of] punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the . . . punishment." TEX. R. APP. P. 44.2(a). Any Confrontation Clause error is of Constitutional dimension and subject to a constitutional harm analysis. *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010).

When conducting a Constitutional harm analysis, the primary issue is whether there is a reasonable possibility or likelihood the Constitutional error might have contributed to the conviction. *Rubio v. State*, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). To make this determination, an appellate court assesses the likelihood that the error was a contributing factor in the jury's deliberations and

decision. *Langham*, 305 S.W.3d at 582; *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). We do not focus on the propriety of the jury's verdict, *Langham*, nor does our analysis turn on whether the jury's verdict was supported by the evidence. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. Instead, the issue to be decided is whether the alleged constitutional error adversely affected the integrity of the process leading to the conviction. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. Thus, evidence admitted in violation of the Confrontation Clause requires reversal if there is a reasonable possibility that, within the context of the entire trial, the perceived error "moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690.

When determining whether constitutional error under the Confrontation Clause may be declared harmless, the following factors are relevant: (1) how important was the out-of-court statement to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690. In addition to the factors listed above, an appellate court may consider: (1) the source and nature of the error; (2) to what extent, if any, it was emphasized by the State; and (3) how much weight the jury

8

may have assigned to the erroneously admitted evidence compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. *Langham*, 305 S.W.3d at 582; Scott, 227 S.W.3d at 690. "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting TEX. R. APP. P. 44.2(a)).

The State argues that the admission of appellant's wife's out-of-court statements is harmless because "they were cumulative of [appellant's] own admissions of driving to the police." However, appellant's wife's testimony did more than confirm that appellant had been driving the night of the accident. She also told police that the car had not been damaged before that night. The State emphasized this aspect of her testimony at punishment when the prosecutor stated:

> What does his wife say? She's surprised. Why are the cops at my door at 2:00 in the morning? What, the car was in an accident? She goes outside and blurts out that wasn't there before; that damage is new.

Appellant's wife's statements provide the State's only evidence that the damage to appellant's vehicle was new and had occurred that same night, while appellant was out driving, because appellant's wife had never seen the damage before. Thus, we conclude that there is a reasonable possibility that, within the context of the entire

9

trial, the error in admitting appellant's wife's out-of-court statements "moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690.

We sustain appellant's second issue on appeal. In light of our disposition of appellant's second issue, we need not address his first issue on appeal and decline to do so. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the trial court's judgment and remand for further proceedings.



Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).