

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00385-CR

———————————————————

ASHLEY DOWNING, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 2
Denton County, Texas
Trial Court No. CR-2018-07433-B

Before Gabriel, Kerr, and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Ashley Downing appeals from her conviction for driving while intoxicated and argues that her constitutional confrontation rights were violated at trial when the forensic scientist who performed the gas-chromatography testing on Downing's blood sample was unavailable as a trial witness. We conclude that because a second scientist conducted an independent review and analysis of the raw data produced by the initial gas-chromatography testing and was subject to cross-examination at trial, the trial court did not err by admitting the second scientist's testimony.

## I. BACKGROUND

### A. THE OFFENSE[1]

Downing was pulled over for speeding on July 24, 2018. After approaching Downing's car, the officer smelled alcohol. Downing admitted to the officer that she had consumed a glass of wine that night. She consented to giving a breath specimen at the scene, which revealed an alcohol concentration of 0.165.[2] Downing did not pass two of the field-sobriety tests and had difficulty counting backward from fifty-

---

[1]This case was submitted on a partial reporter's record, which included (1) the pretrial hearing on Downing's objection to the admission of the second scientist's testimony and (2) the second scientist's trial testimony. *See* Tex. R. App. P. 34.6(c). The facts of the offense were drawn from the arresting officer's probable-cause affidavit.

[2]A person is legally intoxicated if her alcohol concentration is 0.08 or more. *See* Tex. Penal Code Ann. § 49.01(2)(B).

six.  On an intoxication scale of one to ten, with ten being "passed out," Downing rated herself a three.  The officer arrested Downing for driving while intoxicated, and Downing refused to provide a blood specimen.

## B.  THE EVIDENTIARY DISPUTE

The officer obtained a warrant for a blood specimen, which was drawn and forwarded to the Department of Public Safety's lab.  Christine Hay, a forensic scientist at the lab, performed the gas-chromatography testing on Downing's blood specimen, which generated raw data for review.  The raw data includes information regarding "the temperature of the samples and the amount of . . . blood in each sample and the different headspace vials, and the different amounts and the graphs of how everything should be correlating."  Hay reviewed this data to determine a blood-alcohol concentration for Downing's specimen and prepared a forensic lab report.

Renea Eckelkamp, another forensic scientist at the lab, performed a technical review of the forensic lab report.  Such a review is required for every gas-chromatography report "to see if everything's correct and matches and the conclusion is sound."  Eckelkamp performs several tasks in such a review:

> [Eckelkamp] look[s] at the data to see if like the calibration curve passed, to see if the checks passed, as well and make sure all the other known ethanol standards passed and are within agreement of the known ethanol concentration that we are known to be.  And then [she] also look[s] to see if the data that is generated for the case, if that matches what it should be based on the data, the numbers [she is] given and then to see if everything looks good as well.

After her review of the data, Eckelkamp agreed with Hay's analysis and conclusion and signed the forensic lab report as the technical reviewer.

Approximately five months before Downing's trial, Hay moved out of state and was unavailable to testify. Downing sought to exclude Eckelkamp from testifying at trial because she was not physically present when Hay performed the gas-chromatography testing, rendering Eckelkamp's testimony a violation of Downing's confrontation rights:

> [I]f the state attempts to say the analyst that was not there can testify and it's not testimonial, how would she explain that the pipettes were calibrated properly, that the instrument was at the right temperature, that the tubes were withdrawn from the proper position and put in the correct position, that the correct amount of aliquot was put into the headspace vials? This is all testimonial. It goes to the precision of the lab.

The trial court clarified that Eckelkamp had performed her technical review of the forensic lab report before it was submitted, not after Hay moved out of state and could not testify—it was done "in the normal course of business." The trial court overruled Downing's objection and allowed Eckelkamp to testify.

## C. THE TRIAL AND APPEAL

Both parties seem to agree that the State did not introduce the forensic lab report or the raw data into evidence at trial, and the partial reporter's record does not show differently. *See* Tex. R. App. P. 34.6(c)(4) (providing presumption that partial reporter's record is "the entire record for purposes of reviewing" an issue that does not challenge the sufficiency of the evidence). However, Eckelkamp testified that her

4

independent review of the raw data produced by the gas-chromatography testing led her to conclude that Downing's blood-alcohol concentration had been 0.136. Eckelkamp was questioned about the lab's testing procedures, such as pipette calibration and vial positioning. Eckelkamp testified that based on her review, the required testing safeguards had been complied with. In fact, any testing irregularities would have been apparent to Eckelkamp when she reviewed the raw data.

The jury found Downing guilty of driving while intoxicated, and the trial court sentenced her to 180 days' confinement, which was suspended, and placed her on community supervision for 24 months. Downing filed a motion for new trial, which was denied. Now on appeal, Downing argues that because Eckelkamp did not retest the specimen and could not testify as to how the gas-chromatography testing was actually, physically performed, her testimony violated Downing's right to confront the witness against her—Hay.

## II. CONFRONTATION

### A. STANDARD OF REVIEW

We generally review the admission of evidence for an abuse of the trial court's discretion. *See Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). But whether a particular out-of-court statement is testimonial or not for purposes of admissibility under the Confrontation Clause is a question of law that we review de novo. *See Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). Thus, we independently review the

5

admission of Eckelkamp's testimony, giving no deference to the trial court's determination. *See Davis v. State*, 268 S.W.3d 683, 704 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Lilly v. Virginia*, 527 U.S. 116, 136–37 (1999) (plurality op.)).

## B. INDEPENDENT ANALYSIS

The Confrontation Clause prohibits the admission of out-of-court testimonial statements made by a witness who does not appear at trial unless she is unavailable and the defendant had a prior opportunity to cross-examine her. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Because forensic lab reports are testimonial, the Confrontation Clause applies to their admission. *Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011). Thus, the admission of a forensic lab report created solely by a nontestifying scientist violates the Confrontation Clause. *Paredes v. State*, 462 S.W.3d 510, 517 (Tex. Crim. App. 2015). The Confrontation Clause is also offended by an expert's merely explaining a nontestifying scientist's report when the expert has no personal knowledge of how the testing was conducted even though familiar with how the analysis is customarily performed. *Id.* However, an expert's testimony based on a scientific forensic analysis that was performed by a nontestifying scientist is admissible if (1) the expert independently analyzes the data generated by the nontestifying scientist and develops her own conclusions from the data and (2) the lab report created by the nontestifying scientist is not offered into evidence. *Id.* at 517–18.

Here, the forensic lab report was not admitted into evidence. And Eckelkamp was not a mere conduit or surrogate through which Hay's conclusions could be admitted. Instead, Eckelkamp reviewed the nontestimonial raw data produced by the gas-chromatography test,[3] verified the accuracy of the data, and explained her role in the testing process. Her testimony was subject to cross-examination regarding the bases for her conclusion and the accuracy of the testing process. These facts establish that Downing's confrontation rights were not violated by Eckelkamp's testimony even though Hay was not subject to cross-examination and even though Eckelkamp, in reaching her conclusions, relied on the nontestimonial raw data Hay produced by performing the gas-chromatography testing. *See id.* at 517–19; *Gore*, 2020 WL 4006118, at *3–4; *Henderson v. State*, No. 02-15-00397-CR, 2017 WL 4172591, at *17–18 (Tex. App.—Fort Worth Sept. 21, 2017, pet. ref'd) (mem. op., not designated for publication); *Gaddis v. State*, No. 13-16-00190-CR, 2017 WL 2979802, at *4–5 (Tex. App.—Corpus Christi–Edinburg July 13, 2017, no pet.) (mem. op., not designated for

---

[3]*See Paredes*, 462 S.W.3d at 519 (holding DNA profiles—"the raw, computer-generated data"—to be nontestimonial because data did not come from a witness capable of being cross-examined, but were produced by a computer); *Torres v. State*, No. 14-19-00286-CR, 2020 WL 5242301, at *5 (Tex. App.—Houston [14th Dist.] Sept. 3, 2020, no pet. h.) (stating "computer-generated DNA data" was nontestimonial because testifying analyst formed an independent opinion); *Gore v. State*, 605 S.W.3d 204, 2020 WL 4006118, at *3–4 (Tex. App.—Beaumont 2020, no pet.) (holding raw data from gas-chromatography test not testimonial because "the machine did not create the results in anticipation of testifying at trial"). *See generally Bullcoming*, 564 U.S. at 654 n.1 (explaining testing procedures and analyses required for gas chromatography).

publication); *Talamantes v. State*, No. 08-14-00142-CR, 2015 WL 6951288, at *3 (Tex. App.—El Paso Nov. 10, 2015, no pet.) (not designated for publication).

## III. CONCLUSION

Eckelkamp performed an independent review of the raw data produced by the gas-chromatography testing of Downing's blood specimen. Because this review was not a mere regurgitation of Hay's conclusion from the same raw data and because the forensic lab report was not admitted into evidence, the admission of Eckelkamp's testimony did not violate Downing's confrontation rights. Thus, we overrule Downing's appellate issue and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 1, 2020