

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00088-CR

JOSHUA KEITH RIGO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 31st District Court
Gray County, Texas
Trial Court No. 9323, Honorable Steven Ray Emmert, Presiding

October 29, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Joshua Keith Rigo appeals his conviction for murder and resulting ninety-year prison sentence and $10,000 fine.[1] Through two issues he asserts the trial court abused its discretion and reversibly erred by denying his Sixth Amendment right to confront an adverse witness and by overruling his objection to the qualification of a witness he asserts rendered an expert opinion. Finding error was not preserved, and

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

even if the claimed error occurred and had been preserved appellant was not harmed, we will overrule appellant's issues and affirm the judgment.

## Background

Because appellant does not challenge the sufficiency of the evidence, we will state only those facts necessary for the disposition of the appeal. During December 2012 appellant lived with his aunt in Pampa, Texas. He departed her home on foot about 11:00 p.m. on December 31 wearing boots and camouflage pants. Before leaving, he told his aunt he might not see her again.

Kristi Slatten lived in Lefors, Texas. Although married, evidence indicated she and appellant were involved in a relationship and were together in the early morning hours of January 1, 2013. At the time, Slatten's husband was in Corpus Christi where he was employed. She and her husband spoke briefly by telephone shortly after midnight on January 1. A photograph on Slatten's Blackberry cellphone depicted appellant, shirtless, standing in Slatten's living room wearing a white baseball cap, camouflage pants, and cowboy boots. Testimony showed the image was saved to Slatten's Blackberry at an unspecified time on January 1, 2013. The image was transmitted from the Blackberry to appellant's cellphone at 1:57 a.m. on January 1.

During the mid-morning hours of January 1, Slatten's father-in-law found her lying dead on the living room floor of her home. Her body was positioned face down with arms underneath. Other than a t-shirt and socks, her body was unclothed.

Later in the day, while processing the crime scene and collecting evidence, law enforcement officers took possession of a bottle of "Mad Dog 20/20 Orange Jubilee," an

enhanced wine beverage, found on an end table in Slatten's living room. Fingerprints on the bottle, according to trial testimony, matched appellant's. Guns from a living room gun case and knives were discovered missing. Also missing was Slatten's vehicle, an Avalanche truck equipped with an OnStar communications and tracking system.

There was evidence Slatten struggled with her assailant. Her nose was bloodied and appeared broken, her left arm bore a large cut, her hands exhibited defensive wounds, with bruising visible about her neck. An autopsy identified blunt force injuries to Slatten's head and neck. Manual strangulation was determined the cause of death.

Using the OnStar system, law enforcement located Slatten's truck near Panhandle, Texas, where it was stopped by local officers. Appellant was the driver. At the time he was wearing a white baseball cap, camouflage pants, and a pair of cowboy boots. Slatten's purse and cellphone were in the vehicle, as was a pair of underwear Slatten's husband identified in trial testimony as hers. DNA evidence indicated a smudge of blood found on one of appellant's socks was Slatten's. During the early morning of January 1, appellant gave the missing guns and knives to his father in Amarillo as a gift. Evidence at the guilt-innocence phase of trial showed appellant had a prior felony conviction and could not lawfully "possess or carry or own a firearm . . . for a period of time."

## Analysis

In his first issue appellant asserts the trial court committed harmful error by overruling his Confrontation Clause objection to a testimonial statement by a State's witness, deputy sheriff Zach Kidd. Appellant contends in his second issue deputy Kidd

3

was not shown to be qualified to render an expert opinion and by overruling an objection on that ground the trial court reversibly erred. Appellant's two issues arise from an exchange during the State's direct examination of deputy Kidd.

The State argues appellant failed to preserve the error he now claims by not raising a timely objection. To preserve a complaint for appellate review, a party must make a timely request, objection, or motion stating the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g). Ordinarily, an objection is timely if it precedes the objectionable testimony. *Polk v. State,* 729 S.W.2d 749, 753 (Tex. Crim. App. 1987). "[I]f a question clearly calls for an objectionable response, a defendant should make an objection before the witness responds." *Dinkins v. State,* 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). An objection made after the witness answers may nevertheless sufficiently preserve error if an acceptable reason exists for not objecting earlier. *See Dinkins,* 894 S.W.2d at 355; *Girndt v. State,* 623 S.W.2d 930, 934-35 (Tex. Crim. App. [Panel Op.] 1981) (noting that lateness may be excused if witness answers question before attorney can object or a showing is made that counsel misunderstood the question when asked).

After careful review of the record, we must agree with the State's contention. Appellant's objections came during deputy Kidd's testimony that he scanned appellant's fingerprints into an "Automated Fingerprint Index System," which he described as "a regional database with people that have been incarcerated in the jails in the top 26 counties in the Panhandle." The objections came after Kidd testified he "entered" appellant's fingerprints into the system, after he responded to another question with a

4

brief description of the function and workings of the system, after he responded positively to a question asking if he "c[a]me up with any matches on that fingerprint from the MD 20/20 bottle," and after he responded to the question asking the identity of the match.[2] We cannot say the record demonstrates a reason for the late objections, or that it indicates Kidd answered the questions before the objections going to appellant's two issues were possible. *See Girndt,* 623 S.W.2d at 934-35. Appellant's objections were not timely raised, and his issues present nothing for our review.

The State also argues, moreover, that even if error were preserved and even if we were to conclude the trial court erred by allowing Kidd's testimony that the AFIS showed the fingerprints lifted from the MD 20/20 bottle were appellant's, appellant suffered no harm. We agree with this contention also.

Because of appellant's relationship with Slatten, nothing in the record indicates it was remarkable to find his fingerprints on an item located in her home. Indeed, from the record it is impossible to determine whether appellant handled the MD 20/20 bottle while he was present at Slatten's home or whether he gave the bottle to Slatten at another location and she took it to her home. In this respect, law enforcement found an identical bottle of MD 20/20 "Orange Jubilee" during the search of appellant's bedroom at his aunt's house in Pampa.

---

[2] Before he was interrupted by appellant's initial objection, Kidd responded, "Joshua Keith Rigo was a candidate on multiple prints that were obtained from this bottle. And the AFIS system generates scores—" He previously had said the AFIS produces a "candidate list." Although Kidd did not say so, we will assume appellant was the only "candidate" the AFIS system listed.

Further, the bottle and its fingerprints were minor items among the evidence linking appellant to Slatten's murder. As noted, a cellphone photograph depicted appellant wearing a white baseball cap, camouflage pants, and cowboy boots in Slatten's home early in the morning on January 1. Later that morning appellant delivered guns from Slatten's home to his father in Amarillo. At his arrest around noon that day, appellant had in his possession or was wearing a white baseball cap, camouflage pants, and cowboy boots like those in the photograph. He drove Slatten's Avalanche, with her purse, Blackberry and panties in the vehicle. Blood on one of his socks was Slatten's. Appellant's argument that the fingerprint evidence was significant depends on alternative hypotheses to explain the evidence of his guilt. As examples, his brief responds to his possession of her vehicle, phone and purse by noting that he told the arresting officer Slatten had loaned him the car. He responds to the evidence of his possession of the guns by referring to evidence she had "a propensity to shower [a]ppellant with gifts." Appellant acknowledges that the State never made mention of the fingerprint evidence in argument to the jury.

Whether assessed under the constitutional standard for harmless error review[3] or that for non-constitutional error[4] the admission of the challenged fingerprint evidence was harmless.

---

[3] We review any Confrontation Cause error under the constitutional error standard and will therefore reverse the trial court's judgment unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *See* TEX. R. APP. P. 44.2(a); *Langham v. State,* 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) ("The court of appeals correctly identified any Confrontation Clause error to be of constitutional dimension, and therefore . . . subject to a constitutional harm analysis").

Appellant's first and second issues are overruled.

Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.

---

[4] A trial court's erroneous admission of evidence is non-constitutional error subject to the analysis of appellate rule 44.2(b). TEX. R. APP. P. 44.2(b) (error "that does not affect substantial rights must be disregarded"); *Taylor v. State,* 268 S.W.3d 571, 592 (Tex. Crim. App. 2008) ("error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict").