**AFFIRMED and Opinion Filed December 13, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00312-CR**

**MANUEL MORALES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. M22-30279-H**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Smith, and Garcia
Opinion by Justice Smith

Appellant Manuel Morales was convicted by a jury of the Class A misdemeanor offense of driving while intoxicated with a blood alcohol concentration of 0.15 or more. *See* TEX. PENAL CODE ANN. § 49.04(a), (d). The trial court assessed appellant's punishment at 180 days' confinement in Dallas County jail, probated his sentence, and placed appellant on community supervision for twelve months. The trial court also ordered appellant to pay a $250 fine. In one issue, appellant argues the trial court's admission of certain statements contained

within a 9-1-1 call, which he contends were testimonial, violated his Sixth Amendment right to confrontation. For the reasons discussed below, we affirm.

**Procedural and Factual Background**

Appellant and Denise Chacon were involved in a single-car accident on March 12, 2022. At 12:23 a.m., Rebecca Escobar called 9-1-1 to report an automobile wrecked in a ditch. She did not witness the accident. The hood of the vehicle was down in the ditch, the back tires were off the ground, and the driver's side was jammed next to the embankment. Appellant appeared to be trapped in the vehicle and need emergency assistance. As the call continued, appellant exited the vehicle. Escobar reported that appellant was intoxicated and throwing up, and the 9-1-1 operator asked if he was the passenger or the driver. Escobar stated that he was the driver. She then informed the 9-1-1 operator that he was trying to walk away from the car but stopped because he could not really walk.

When police arrived, appellant repeatedly told officers that Chacon was the driver and Chacon told officers that appellant was the driver. Grand Prairie Police Officer Liam Bahr conducted standardized field sobriety tests and determined that appellant had lost the normal use of his mental and physical faculties. Appellant was arrested and transported to Grand Prairie Medical City for a blood draw. His blood alcohol concentration was 0.216.

At trial, defense counsel stipulated to appellant's blood alcohol concentration and agreed that his blood alcohol content was 0.15 or more. The disputed issue

–2–

before the jury was whether appellant was the driver. Defense counsel orally moved to exclude Escobar's statements made to the 9-1-1 operator after appellant exited the vehicle, specifically her statement that appellant was the driver. The trial court denied defense counsel's request. Besides Chacon's claim to police that appellant was the driver, Escobar's 9-1-1 statements were the only evidence that appellant had been operating the vehicle. On direct examination, Officer Bahr testified he learned from another officer, who ran the vehicle's tag at the scene, that the vehicle belonged to appellant. However, on cross examination he agreed he did not list anyone as the registered owner in his police report. Officer Bahr also acknowledged that he did not know who had the car keys or where they were at the scene and did not know Chacon admitted to being drunk that night. He did, however, observe that someone had thrown up on the inside area of the driver's side door.

At the close of the State's case, defense counsel moved for a directed verdict on the ground that there was no witness testimony or other evidence that established appellant operated the vehicle. The trial court denied appellant's motion. Appellant then testified in his own defense, explaining that Chacon owned the vehicle and that she was driving. They went to a restaurant, had drinks, and when they left, she took a wrong turn. She tried to turn around, but it was very dark and she drove into the ditch. Appellant testified that they were there for thirty minutes before Escobar arrived and called 9-1-1. He further explained that Chacon lied to police about who was driving because she feared a DWI would prevent her from obtaining temporary

–3–

protected immigration status and she needed to stay in the country to support her three children. Consistent with his stipulation to his 0.216 blood alcohol concentration, appellant admitted he was intoxicated.

The jury found appellant guilty, and the case proceeded to the trial court for punishment. During the punishment phase, the trial court announced that the parties had come to an agreement on punishment and that the court would affirm the agreement. The trial court sentenced appellant to 180 days' confinement in the Dallas County jail, granted appellant's application for community supervision, suspended appellant's sentence, placed him on community supervision for a term of twelve years, and ordered him to pay a $250 fine. Appellant timely filed a notice of appeal, and this appeal ensued.

## Testimonial Statements

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In *Crawford v. Washington*, the Supreme Court of the United States held that the Confrontation Clause bars the admissibility of testimonial hearsay statements unless the witness is unavailable to testify at trial and the defendant had a prior opportunity to cross examine the witness. 541 U.S. 36, 68 (2004). Generally, testimonial hearsay statements would include (1) ex parte in-court testimony or its functional equivalent that declarants would reasonably expect to be used to prosecute; (2) statements contained in formalized

testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements that were made under circumstances that would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. *Id.* at 51–52. Statements do not have to be made under oath to be considered testimonial. *Id.* at 52. Thus, statements taken by police in the course of interrogations are also testimonial even though they are not sworn testimony. *Id.*

However, not all statements in response to police interrogation are testimonial. *Davis v. Washington*, 547 U.S. 813, 822 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* Thus, statements made in a 9-1-1 call in response to the operator's questions[1] are generally nontestimonial because they involve describing current circumstances requiring immediate police assistance. *Id.* at 827. Statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822.

---

[1] In *Davis*, the court assumed for purposes of its opinion that 9-1-1 operators, although not law enforcement officers themselves, were agents of law enforcement when conducting interrogations of 9-1-1 callers and, thus, their acts were acts of the police. 547 U.S. 823 n.2.

–5–

Whether a particular statement is testimonial is a question of law. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Accordingly, we review de novo a trial court's ruling as to whether a statement is testimonial. *Id.*

The testimonial statement at issue here is contained within Escobar's 9-1-1 call on the night of the offense. Appellant acknowledges that, generally, statements made to a 9-1-1 operator are not testimonial. However, appellant did not object to the admissibility of the entire 9-1-1 call. Instead, he limited his objection to the twenty seconds in which the 9-1-1 operator asked if appellant was the driver and Escobar responded that he was. Appellant relies on *Davis* in support of his argument. In *Davis*, the Supreme Court of the United States explained that a conversation can consist of both testimonial and non-testimonial statements: "This is not to say that a conversation which begins as an interrogation to determine the need for emergency assistance cannot . . . evolve into testimonial statements . . . once that purpose has been achieved." 547 U.S. at 828. Appellant further argues that Escobar, who initiated the 9-1-1 call, was not a victim of a crime and was not in fear or subject to any emergency. She was simply reporting the aftermath of an automobile accident. While the first several minutes of the call involved relaying information to assist in determining what response was necessary and thus the statements enabled police to meet an ongoing emergency, the emergency ended when appellant exited the vehicle and was no longer trapped. Appellant asserts the question by the 9-1-1 operator as to whether appellant was the driver or the passenger

was no longer seeking information for an ongoing emergency but instead information to use in a future criminal prosecution. Therefore, appellant argues, Escobar's response that appellant was the driver was testimonial and should have been subjected to cross-examination.

We understand appellant's concern in this case, especially when the statement at issue was offered to prove the only disputed element of the State's case and appellant was left without the ability to cross-examine Escobar about what she saw that night. Although there is no doubt Escobar called 9-1-1 seeking emergency assistance for someone who appeared to be trapped in a vehicle and was potentially injured after an accident, we agree that the question asked by the 9-1-1 operator after she learned appellant looked intoxicated could have also been to memorialize facts for a later prosecution. When asked if it was necessary for her to know what position the various people were occupying in the car, the 9-1-1 operator answered, "Yes," and explained that it changes the response from the officers—they would have approached it differently had the passenger been intoxicated instead of the driver. She further explained it was important to know whether the driver was sober or intoxicated "[b]ecause you shouldn't be operating a vehicle if you're under the influence" and because it determined their call response, i.e. whether it was "just a car accident or an intoxicated driver." Thus, the record shows that the 9-1-1 operator may have been serving two roles in her conversation with Escobar: (1) to continue

to facilitate the proper emergency response,[2] and (2) to memorialize what happened for later use in a criminal DWI prosecution. *See Bryant*, 562 U.S. at 368 ("Police officers in our society function as both first responders and criminal investigators. Their dual responsibilities may mean that they act with different motives simultaneously or in quick succession.").

However, our focus in deciding whether a statement is testimonial is on the *primary* purpose of the statement. *Davis*, 547 U.S. at 822, 827–30. To determine a statement's primary purpose, "we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 562 U.S. 344, 359 (2011). If the statement's primary purpose is to enable police assistance to meet an ongoing emergency, it is nontestimonial. *Davis*, 547 U.S. at 822. If its primary purpose is to establish or prove past events for a later criminal prosecution, it is testimonial. *Id.* Stated another way, we look to whether the declarant was describing events as they were happening in order to secure emergency assistance or describing what happened in the past in order to establish a past fact. *Id.* at 827, 830. The analysis should be centered on the declarant's statements, as it is the hearsay statements that must withstand constitutional scrutiny, not the interrogator's questions. *Id.* at 822 n.1; *Bryant*, 562 U.S. at 367 n.11. That that does not mean we look solely at the declarant's motives in determining the

---

[2] The State argued at trial that whether the appellant was the driver or passenger was also important information to know for assessing potential medical treatment needed because "we know that a steering wheel is present, which can attribute to certain injuries that might not be present on a passenger."

statement's primary purpose. *Bryant*, 562 U.S. at 367–69. Instead, we conduct a combined inquiry that accounts for both the declarant and the interrogator and the contents of both the questions and the answers. *Id.*

The United States Supreme Court recognized in *Davis* that the conversation could evolve into testimonial statements if the 9-1-1 operator begins to ask the victim a battery of questions after the need for emergency assistance has been resolved.[3] 547 U.S. at 828–29. Here, however, we cannot conclude that the emergency was resolved until police arrived, which is when the 9-1-1 call ended.

Appellant argues that the emergency ended when he exited the vehicle. We disagree. When appellant exited the vehicle, he could barely walk and was vomiting. Thus, he was potentially still a threat to himself, first responders arriving and trying to treat him, and any other members of the public that were traveling down that road and came upon appellant stumbling about. *See Ramjattansingh v. State*, 587 S.W.3d 141, 160–61 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (emergency was not contained when drunk driver pulled into parking lot because, without police intervention that 9-1-1 caller was seeking, driver "could have wandered off or returned to the road and put himself and others at risk of harm"); *see also Bryant*, 562 U.S. at 364 (even when the threat to a victim has been resolved because the

---

[3] We note appellant has not cited a case, nor have we found one, in which a court has concluded that the statements made to a 9-1-1 operator were testimonial.

perpetrator fled the scene, the emergency has not necessarily ceased because the threat to first responders and the public may continue).

Because the emergency was ongoing while Escobar was on the phone with 9-1-1, we must conclude that the primary purpose of her statements was to enable police assistance. While a secondary purpose may have been to help memorialize facts that the police could later review in its investigation, there is no evidence that the primary purpose of Escobar's call was to make a statement for use in a future prosecution against appellant. Therefore, the trial court did not err in admitting Escobar's statements to the 9-1-1 operator. We overrule appellant's sole issue on appeal.

## Conclusion

Having overruled appellant's sole issue, we affirm the judgment of conviction.

|  |  |
|---|---|
|  | /Craig Smith// |
| 230312f.u05 | CRAIG SMITH |
| Do Not Publish | JUSTICE |
| TEX. R. APP. P. 47.2(b) | |

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

MANUEL MORALES, Appellant

No. 05-23-00312-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 7, Dallas County, Texas Trial Court Cause No. M22-30279-H. Opinion delivered by Justice Smith. Justices Pedersen, III and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of December, 2024.